Opinion issued January 16, 2007













In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00987-CV






"JANE DOE," Appellant


V.


BRAZORIA COUNTY CHILD PROTECTIVE SERVICES, Appellee






On Appeal from the 300th District Court

Brazoria County, Texas

Trial Court Cause No. 28, 101






O P I N I O N


 Appellant, Jane Doe, appeals the trial court's judgment, rendered on a jury
verdict, terminating the parent-child relationship between her and her children, M.T.
IV and R.A. This case requires us to decide (1) whether the timing of the filing of the
notice of appeal deprives us of jurisdiction to decide the case and (2) whether we
should reverse the judgment of termination based on ineffective assistance of
Antuna's trial counsel. We hold that we have jurisdiction to consider this appeal and
that Antuna has not established her claim of ineffective assistance of counsel. We
affirm the trial court's judgment. 

Factual and Procedural Background 

 Doe and M.T. III are the parents of M.T IV., born in September 1997. Doe
and Q. L. are the parents of R.A., born in August 2001.

 Case investigation began based on a referral stating that minor children resided
in a home where drugs were present. On March 16, 2004, Lake Jackson Police
Department Detective Carey and an employee of appellee Brazoria County Children
Protective Services (BCCPS), visited Doe's home where they found her and her
boyfriend, R. P. The children were not there. With Doe's consent, the police
searched her apartment and found two small baggies of marijuana, roach clips, a set
of scales, rolling paper, and three .357 magnum bullets, though no gun was found. 
The police took photographs of the apartment, which were later admitted into
evidence. The police arrested Doe and R.P. and charged them with possession of
marijuana and child endangerment.

 On March 23, 2004, the trial court signed temporary orders granting temporary
managing conservatorship of the children to BCCPS, and temporary possessory
conservatorship to Doe. The trial court also awarded temporary possessory
conservatorship of R.A. to Q.L. and temporary possessory conservatorship of M.T.
IV to M.T. III.

 Additionally, the trial court ordered Doe to (1) submit to and cooperate in the
development of a psychiatric evaluation, (2) successfully complete parenting classes,
(3) successfully complete counseling addressing the specific issues that led to the
children's removal, (4) successfully complete a drug and alcohol assessment, (5)
remain drug and alcohol free during the pendency of the suit, and (6) maintain a safe
and stable home environment. The court admonished Doe that fulfillment of these
requirements was required to obtain the children's return and that failure to comply
with any of the orders could result in the restriction or termination of her parental
rights. 

 On December 28, 2004, BCCPS requested that the trial court restrict Doe,
subject to conditions and restrictions, to supervised access to the children as the court
determined was in their best interest, or, in the alternative, that the trial court
terminate the parent-child relationship between her and the children. As grounds for
termination, BCCPS asserted that Doe (1) knowingly placed or knowingly allowed
the children to remain in conditions endangering their physical or emotional well-being, (1) (2) engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangers their physical or emotional well-being, (2) and (3)
failed to comply with the provisions of a court order that specified the conditions
required for her to obtain the return of the children, who have been in the temporary
managing conservatorship of the Texas Department of Family and Protective Services
for not less than nine months as the result of the children's removal from the parent,
under Chapter 262 of the Texas Family Code, for abuse and neglect of the children. (3)

 On September 6, 2005, the trial court began the hearing on BCCPS's request
for final orders regarding access to the children or the termination of the parent-child
relationship between the children and their parents. At the opening of the
proceedings, the trial court approved an agreed judgment terminating the parent-child
relationship between M. T. III and M.T IV. The trial court also ordered the parent-child relationship established between Q.L. and R.A., dismissed the termination case
against Q.L., and approved the monitored return of R.A. to Q.L., based on agreed
removal of R.A. while Q.L. completed specified services over the next 180 days.

 The trial court then proceeded with BCCPS's request to determine Doe's
access to the children or terminate the parent-child relationship between the children
and Doe. BCCPS called Doe as an adverse witness. She testified that before March
16, 2004, the children resided primarily with her. On March 16, 2004, BCCPS and
the police found marijuana in her home, which led to the convictions of her and R.P.
for its possession. That day, Doe admitted to the BCCPS worker that she sold
marijuana from her home, and that she knew R.P. had been incarcerated a few times. 
At the time, she thought it was all right for R.P. to be around her children, despite his
prior incarceration. 

 Doe admitted that prior to March 16, 2004, drug users came to her home to buy
marijuana. She said that R.P. forced her to sell drugs from her house. She feels like
she has a drug problem, spanning seven or eight years, or roughly M.T. IV's entire
life. She tried to address the problem in 2004, when BCCPS sent her go to
rehabilitation, but that did not go well. On March 29, 2004, she tested positive for
marijuana and cocaine. BCCPS offered her drug rehabilitation services, but she quit
because she lost hope with all she was going through, including the loss of her
children.

 Doe submitted to drug rehabilitation again in May 2004, and which she
completed successfully. Not long thereafter, however, she miscarried R.P.'s baby and
started using drugs again. She admitted to using cocaine on March 15, 2005. She has
had one or two citations for public intoxication during the pendency of this case. The
last time she used marijuana was the weekend before trial. 

 Doe conceded that she did not follow through on her individual therapy
provided by BCCPS. She knows it is wrong to use drugs around children, that she
"messed up," that the only environment her children know is living with a parent who
is a drug addict, and that she will probably not get her children back. She is an addict
because she has not been able to choose her children over drugs. 

 Doe testified that though she was addicted to drugs, she took care of the
children, bathed them, fed them, and saw that M.T. IV went to school. She did not
do drugs in front of her children. She last saw the children in July because she was
in Oklahoma in August. The last place she worked was at the Country Café in
February or March, but she quit again. Before she was with R.P., she and the children
lived together, and she held a job. 

 When BCCPS offered Doe a free psychological evaluation and parenting
classes, she completed the evaluation, but not the parenting classes. She has paid her
$50 monthly court-ordered child support for the children. The longest she has gone
without seeing the children is a month, when she was out of town.

 R.P. is her ex-boyfriend with whom she lived, on and off, for the last two and
one-half years, beginning a couple of months before BCCPS removed the children. 
He was not violent while she still had the children, and she did not know about his
past of beating women. R.P. did not use drugs around her. On June 9, 2004, R.P.
physically abused her, resulting in his conviction for assault. She obtained two
protective orders against R.P., one in February 2005, and one in May 2005. They had
been fighting off and on since May 2005, and she broke off the relationship in July
2005. Fearing for her life, she went to live for a month with relatives in Oklahoma. 
Doe has no home currently because of R.P.'s threats against her.

 Doe lives with her mother in her mother's house in Brazoria and has returned
home for only a couple of weeks. She has been back in town for only a couple of
weeks. Her mother is her sole means of support. She does not believe that the
children should be returned to her right now.

 On cross-examination by her counsel, Doe testified that her latest effort to
address her drug problem was a phone call to Brazos Place in Freeport, a drug
rehabilitation facility. She completed screening over the phone and expected a call
that a bed was available for her in a couple of days. There was no violence in her
home when her children were taken away. The violence with R.P. occurred after the
children were removed.

 BCCPS case workers testified that at the beginning of the case, the goal was
reunification of Doe with the children, but that it changed because of Doe's
continued, positive drug screenings and noncompliance with conditions that she was
required to complete, such as individual therapy and drug and alcohol rehabilitation.
Doe attended most, if not all, of the visits with the children. In June 2005, Doe called
BCCPS to say she had a drug problem and wanted to go to an inpatient drug
rehabilitation facility. Her caseworker contacted a facility to ensure that a space was
available for Doe, and then gave Doe the phone number and address for the facility. 
To the caseworker's knowledge, Doe never contacted the facility. 

 On one of Doe's visits with the children at BCCPS, the caseworker asked Doe
about bandages on her arm. Doe responded that she had hurt herself by breaking
some glass while moving. This event corresponded in time to the assault for which
R.P. was convicted. 

 The children were not injured when BCCPS picked them up. They are
currently placed together in a therapeutic foster home where they are doing
fantastically and are healthy and happy. The home is very willing to adopt them. 

 One of the BCCPS workers testified that if the children were returned to Doe,
the likely result would be that BCCPS would continue to receive referrals on them
and they would have to be removed from the home, hopefully before any injury. 
BCCPS believes it is in the children's best interest that the parent-child relationship
between them and Doe be terminated so that the children can proceed to have healthy,
wholesome lives.

 Jeannnie Coday, the children's guardian ad litem, testified that her volunteer
job was to get to know the children for the purpose of recommending what is in their
best interest. She has been on their case since three weeks after their removal from
Doe's home. When Coday became acquainted with Doe, they had a very good,
trusting relationship. She genuinely cared for Doe, and wanted her to be successful. 
At that time, BCCPS's plan for the children was family reunification, with which
Coday initially agreed. 

 After several months, however, Coday's opinion about reunification changed
because Doe returned to drugs. Coday does not think Doe can be rehabilitated, or
that Doe can provide the children a safe, stable environment. Doe has been unable
to keep a job. She was fired from her last one. Doe has had five different residences
over the course of this case. 

 Coday has visited with the children in their current placement and they are
doing wonderfully. M.T. IV is in Cub Scouts, choir, and sports, and R.A. will 
participate in sports at the YMCA. Coday thinks the children's best interest would
be served by terminating Doe's parental rights.

 On cross-examination by Doe's counsel, the guardian ad litem acknowledged
that when she met the children three weeks after their removal, they were confused,
upset, and wanted to be returned to their parents.

 The State rested, and then Doe rested, without calling any witnesses. Doe's
counsel requested the following jury question:

 Do you find by clear and convincing evidence that ELIZABETH Doe
failed to comply with the provisions of a court order that specifically
established the actions necessary for the parent to obtain the return of
the children who have been in the permanent or temporary managing
conservatorship of the Texas Department of Family Protective Services
for not less than nine months as a result of the children's removal from
the parent for the abuse or neglect of the children. (4)


The trial court granted Doe's counsel's request.

 In his closing statement, Doe's counsel argued that he had called no witnesses
because BCCPS had not carried its burden of proof; that BCCPS sought to remove
the children from their mother on the basis of insufficient proof--a "couple ounces"
of marijuana and a messy house. He argued that the children were not present when
the police and BCCPS visited Doe and that there was no evidence that they were
endangered, nor any evidence that the children had psychological damage, or had
otherwise suffered while in Doe's care. He also argued that the BCCPS worker who
picked up M.T. IV from school and R.A. from her father did not even testify about
the children's condition then. R.P. became violent after the children's removal. He
concluded by arguing that the evidence shows that, despite Doe's drug problem, she
took care of the children.

 On September 15, 2005, the trial court terminated the parent-child relationship
between Doe and R.A. and M.T. On October 12, 2005, Doe's trial counsel filed a
notice of appeal. On October 13, 2005, the trial court appointed another attorney to
represent Doe on appeal. On November 8, 2005, Doe filed with our court a motion
to extend the time to file the notice of appeal. On November 18, 2005, Doe filed with
our court a motion for new trial and a motion to abate. The motion to abate contained
a copy of the motion for new trial and a statement of Doe's points on appeal.

 We abated the case and remanded it to the trial court to conduct an evidentiary
hearing on the issue of ineffective assistance of counsel prejudgment and
postjudgment. See In the Interest of K.K., 180 S.W.3d 681, 688 n.6 (Tex.
App.--Waco 2005) (published order). At the abatement hearing, Doe's trial counsel
testified that he did not make an opening statement at trial because, at the time, he
thought it was best not to, but he did not specifically recall the reasoning. Regarding
not having called any witnesses on Doe's behalf, her trial counsel testified that Doe
had testified during BCCPS's case-in-chief and that he believed that she had covered
all the points that needed to be covered. He did not call Doe's mother to testify
because she did not want the children, which he thought would undermine the
mother's credibility. Additionally, he did not think Doe's mother had anything to
offer. The decisions he made were based on his trial strategy.

 Regarding the postjudgment proceedings, the trial court took judicial notice
that a motion for new trial and statement of points on appeal were not filed. Doe's
trial counsel testified that he did not timely file the October 12, 2005 notice of appeal
because he did not know that the appeal was accelerated until more than 15 days from
the signing of the judgment. He acknowledged that he did not file a motion for new
trial on Doe's behalf and that he did not know that by not filing one, Doe did not
preserve any legal or factual sufficiency issues. Trial counsel thought that filing the
notice of appeal, extended the time for filing the motion for new trial until other
counsel could be appointed on the matter. Doe's trial counsel testified that he does
not practice family law primarily. He conceded that he did not file a statement of
points on appeal, but did not know that Doe waived points of appeal by not filing
them. 

 The trial court found that Doe's trial counsel was not ineffective at trial or
prejudgment, but that he was ineffective postjudgment for having untimely filed the
notice of appeal, not having filed a motion for new trial, and not having filed a
statement of points on appeal.


Timeliness of Notice of Appeal

 BCCPS has filed a motion to dismiss in which it contends that Doe's appeal
should be dismissed for want of jurisdiction because her notice of appeal, as well as
the November 8, 2006 motion to extend time to file notice of appeal were untimely
filed.

 The procedures for an accelerated appeal under the Rules of Appellate
Procedure apply to an appeal in which the termination of the parent-child relationship
is in issue. Tex. Fam. Code Ann. § 109.002(a) (Vernon 2002); In the Interest of
K.A.F., 160 S.W.3d 923, 924-25 (Tex. 2005). In the accelerated appeal of a civil
case, unless a party moves to extend the time to file an appeal, the notice of appeal
must be filed within 20 days after the judgment or order appealed is signed. Tex. R.
App. P. 26.1(b); K.A.F., 160 S.W.3d at 926-927. The appellate court may extend the
time to file the notice of appeal, if, within 15 days after the deadline for filing the
notice of appeal, the party (1) files the notice of appeal, and (2) files in the appellate
court a motion complying with Rule 10.5(b). Tex. R. App. P. 26.3. A motion to
extend time to file notice of appeal is necessarily implied when an appellant, acting
in good faith, files a perfecting instrument beyond the time allowed for perfecting an
appeal, but within the 15-day period in which appellant would be entitled to move to
extend the filing deadline. See Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex.
1997); In the Interest of B.G., 104 S.W.3d 565, 567 (Tex. App.--Waco 2002, no
pet.).

 The trial court signed the judgment here on September 15, 2005. Under Rule
of Appellate Procedure 26.1(b), the deadline for filing the notice of appeal was
October 5, 2005. Doe did not file her notice of appeal by the October 5 deadline, but
did file it on October 12, 2005, within the 15-day grace period provided by rule 26.3. 
Thus, pursuant to Verburgt, a motion to extend time is necessarily implied. 

 Appellant must still, however, have provided a reasonable explanation for late
filing the notice of appeal. See Jones v. City of Houston, 976 S.W.2d 676, 677 (Tex.
1998) (holding Jones should be entitled to prosecute appeal on reasonably explaining
need for extension to file perfecting instrument filed after deadline, but within 15-day
grace period for filing motion to extend time to file perfecting instrument); Verburgt,
959 S.W.2d at 617 (reversing judgment of court of appeals and remanding to that
court to determine whether Verburgt offered reasonable explanation for failure to
timely file perfecting instrument). A reasonable explanation is "'any plausible
statement of circumstances indicating that failure to file within the [specified] period
was not deliberate or intentional, but was the result of inadvertence, mistake, or
mischance.'" Hone v. Hanafin, 104 S.W.3d 884, 886 (Tex. 2003) (quoting Meshwert
v. Meshwert, 549 S.W.2d 383, 384 (Tex. 1977)). 

 At the abatement hearing, Doe's trial counsel testified that he did not practice
primarily in the area of family law and that the reason he did not timely file the notice
of appeal was that he did not know that the appeal was an accelerated one until more
than 15 days after the trial court signed the judgment. This is a plausible statement
that the failure to timely file the notice of appeal was the result of mistake "'even
though counsel . . . may appear to have been lacking in that degree of diligence which
careful practitioners normally exercise.'" See Dimotsis v. State Farm Lloyds, 966
S.W.2d 657, 657-58 (Tex. App.--San Antonio 1998, no pet.) (quoting Garcia v.
Kastner Farms, Inc., 774 S.W.2d 668, 670 (Tex. 1989)) (holding that appellant's
counsel's explanation of erroneous calculation of date for filing notice of appeal by
adding 30 days to date trial court overruled motion for new trial was reasonable
explanation for untimely filing notice of appeal). 

 For these reasons, we conclude that Doe timely perfected her appeal and we
deny BCCPS's motion to dismiss. We dismiss as moot Doe's motion to extend time
to file the notice of appeal.

Effectiveness of Assistance of Counsel

 In her first issue on appeal, Doe asserts that her trial attorney was ineffective,
both before and after the termination proceedings. Specifically, Doe contends that
her trial attorney did not present a case on her behalf, or timely file the notice of
appeal, and did not preserve any appellate issues, including whether there was
factually sufficient evidence to support the jury's verdict that termination of the
parent-child relationship between Doe and her children was in their best interest.

1. Standard of Review

 To successfully assert an ineffective assistance of counsel claim, a defendant
in a parental termination case must show that his or her counsel's performance was
deficient and that this deficiency prejudiced the defense. In the Interest of J.P. B., a
Child, 180 S.W.3d 570, 574 (Tex. 2005) (citing In the Interest of M.S., 115 S.W.3d
534, 545 (Tex. 2003) (citing Strickland v. Washington, 466 U.S. 668, 687-92, 104 S.
Ct. 2052, 2063-67 (1984))). This standard requires a showing that counsel's errors
were so serious as to deprive the defendant of a fair trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. There is a strong presumption that
counsel's conduct falls within the wide range of reasonably professional assistance,
including the possibility that counsel's decision was based on strategy. M.S., 115
S.W.3d at 549. In deciding whether counsel's performance in a particular case is
deficient, we must take into account all of the circumstances surrounding the case and
focus primarily on whether counsel performed in a "reasonably effective" manner. 
M.S., 115 S.W.3d at 545 (citing Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65). "It is only when 'the conduct was so outrageous that no competent attorney
would have engaged in it that the challenged conduct will constitute ineffective
assistance.'" M.S. 115 S.W.3d at 545 (quoting Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001)). If a reviewing court concludes that appellant's counsel's
conduct to be deficient, the appellate court must determine if that conduct was
prejudicial to the appellant by assessing whether "'there is a reasonable probability
that, but for counsel's unprofessional error(s), the result of the proceeding would have
been different.'" See M.S., 115 S.W.3d at 550, (quoting Garcia, 57 S.W.3d 436 at
440 (citing Strickland, 466 U.S. at 694, 104 S. Ct. at 2068)). Strickland's appellate
"record" requirement also applies to ineffective assistance claims in termination
cases: "'An allegation of ineffective assistance must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness.'" In re
K.K., 180 S.W.3d at 685 (citing In the Interest of S.R.C., 2003 Tex. App. LEXIS
10624, 2003 WL 22966325 at *2 (Tex. App.--Fort Worth Dec. 18, 2003, no pet.)
(Mem. Op.) (citing Thompson v. State, 9 S.W.3d 803, 814 (Tex. Crim. App. 1999)).

2. Presentation of the Case

 Appellant asserts that her counsel was ineffective during trial for not calling
additional witnesses on her behalf, not making an opening statement, and for
questioning her for only about five minutes. 

 In his closing statement, Doe's trial counsel argued to the jury that he called
no witnesses because he did not think BCCPS had carried its burden of proof to show
either child endangerment or that the police and BCCPS had removed the children
because Doe abused or neglected them. Additionally, Doe's trial counsel stated at the
abatement hearing, that Doe had testified in the State's case-in-chief, and he thought
that she had made all the points that needed to be made. Although Doe's counsel's
cross-examination of her at that time was brief, he elicited from her testimony that she
had recently undertaken to get help for her drug problem, that there was no violence
in her home when BCCPS removed the children, and that the violence with R.P.
occurred after the children were removed. Doe's counsel also testified at the
abatement hearing that the trial decisions he made were based on trial strategy and
that he was not ineffective at trial. At the conclusion of the abatement hearing, the
trial court found that Doe's trial counsel had provided effective prejudgment
assistance. 

 The record shows that the jury found, no child endangerment by Doe, by a 10-2
decision. Additionally, the jury's note requesting a definition of "managing
conservator" indicates that appellant's counsel's argument--that the jury should
consider appointing the Department of Family and Protective Services managing
conservator to monitor the children's siutation, but not terminate the parent-child
relationship--was persuasive to at least one or more jury members. 

 We therefore hold, based on the record before us, that Doe has not shown that
her trial counsel's not giving an opening statement, not examining witnesses other
than Doe, and examining her only briefly, fell outside the wide range of reasonably
professional assistance and not based on trial strategy. We further hold that Doe has
not shown how the outcome of her trial would have been different if her trial counsel
had made an opening statement, called other witnesses, or examined her for a longer
period of time.

3. Untimely Perfected Notice of Appeal

 Having already concluded that Doe timely perfected her appeal, we further
conclude that Doe has not been harmed by her trial counsel's actions on perfecting
her appeal.

3. Failure to File Motion for New Trial

 Appellant asserts that her trial counsel's failure to file a motion for new trial
deprives her of appealing the factual sufficiency of the evidence to support the jury's
verdict that termination of the parent-child relationship between her and the children
was in their best interest. We hold that Doe cannot prevail on this ground because
she has not shown that her trial counsel's failure to file a motion for new trial
prejudiced her case.

 In reviewing to determine harm, we proceed as if factual sufficiency challenge
had been preserved, under our established factual sufficiency standard in parental-rights termination cases, understanding that the evidentiary burden in such cases is
"clear and convincing." M.S., 115 S.W.3d at 550 (citing In re J.F.C., 96 S.W.3d 256,
264 (Tex. 2002)).

 When reviewing the factual sufficiency of the evidence supporting a
termination finding, we inquire whether all the evidence, both in support of and
contrary to the trial court's finding, is such that a factfinder could reasonably form a
firm belief or conviction about the truth of the State's allegations. In the Interest of
S.L., 188 S.W.3d 388, 392 (Tex. App--Dallas 2006, no pet.) (citing In re C.H., 89
S.W.3d 17, 27-29 (Tex. 2002)). The fact finder may consider the following non-exclusive factors in determining the best interest of the child: (a) the desires of the
child; (b) the emotional and physical needs of the child, now and in the future; (c) the
emotional and physical danger to the child, now and in the future; (d) the parental
abilities of the individuals seeking custody; (e) the programs available to assist these
individuals to promote the best interest of the child; (f) the plans for the child by these
individuals or by the agency seeking custody; (g) the stability of the home or
proposed placement; (h) the acts or omissions of the parent that may indicate that the
existing parent-child relationship is not a proper one; and (i) any excuse for the acts
or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).

 (a) Desires of the Children

 The children did not testify, and there is scant evidence on this subject. 
Although Coday acknowledged that when she first met them, three weeks after they
had been removed from Doe's home, the children were confused, upset, and wanted
to be returned to their parents, she and a BCCPS caseworker testified that the children
are doing well in their therapeutic foster home and that they are healthy and happy. 
This factor weighs in favor of termination of Doe's parental rights.

 (b) Present and Future Emotional and Physical Needs of the Child

 (1) Emotional Needs

 There was evidence that Doe made all but one of the monthly visits with
the children during the pendency of the case, which indicates a bond between her and
them, tending to show her ability to give them emotional support. Conversely, Doe's
own testimony of drug addiction throughout the children's lives is evidence that she
frequently could not, and, in the future would not, be emotionally present with and
supportive of the children because of her drug abuse. Doe's drug trafficking from her
apartment is evidence that such activity was emotionally injurious to the children. 
This factor weighs against Doe overall.

 (2) Physical Needs

 Regarding Doe's ability to meet the children's physical needs, Doe's
testimony that she paid her $50 child support monthly and kept M.T. IV and R.A. fed
and clean favors her. Additionally, she testified that before R.P. lived with them, she
and the children lived alone in the house, and that she worked. Evidence supporting
the conclusion that Doe is not able to meet the children's physical needs includes
Coday's testimony that Doe was unable to hold a job, Doe's testimony that she sold
illegal drugs, her testimony that she does not have a home because of the threats of
violence toward her by R.P., and her testimony that she is currently living in her
mother's house with her mother who is Doe's sole means of support. This factor
weighs against Doe in terms of meeting the future needs of the children.

 (c) Present and Future Emotional and Physical Danger to Child

 Evidence favorable to Doe was the BCCPS employee's testimony that the
children were not physically injured when the children were picked up by BCCPS,
to that employee's knowledge. Conversely, Doe's continued drug use, drug
trafficking, and her citations for public intoxication are evidence from which a jury
could reasonably infer that the children have been and in the future could be in
physical danger. This factor weighs against Doe.

 (d) Parental Abilities of the Individuals Seeking Custody

 Doe was not seeking custody of the children, but to avoid termination of her
parent-child relationship with them. Evidence supporting her positive parental
abilities was her testimony that she kept the children fed and clean and that there was
no violence in the home until after BCCPS removed the children. Evidence showing
her lack of parental abilities included testimony regarding her drug addiction, her
selling illegal drugs, her job and home instability, and her failure to complete
parenting and rehabilitation classes and training. This factor weighs against Doe.

 (e)/(f) Programs to Assist Custody Seekers in Promoting Children's Best 
 Interest and Custody Seekers Plans for the Children


 Though the parents in the therapeutic foster home were not seeking custody of
the children in this proceeding, the BCCPS worker testified that they were willing to
adopt the children. They had enrolled the children in programs such as Cub Scouts,
choir, and sports with the YMCA to promote their best interests.

 Doe testified that within a couple of days she expected a call from a drug
rehabilitation facility for herself. Indirectly, this could promote the children's best
interest, if their mother successfully completed drug-abuse rehabilitation. Yet, Doe's
testimony that she had been unable to put the children ahead of her drug addiction
makes this factor weigh against Doe.

 (g) Stability of the Home or Proposed Placement

 Both the BCCPS employee and Coday testified that the children were doing
"fantastic" or "wonderful" in the therapeutic foster home, where individuals were
willing to adopt them. Coday testified to the various activities in which the children
were involved while at the therapeutic foster home. Conversely, Doe lacked a home
for the children and could not demonstrate freedom from drugs, which weigh against
her.

 (h) Parent's Acts or Omissions Indicating the Parent-Child Relationship 
 Improper


 (1) Doe admitted prolonged drug addiction, despite several opportunities to
rehabilitate, (2) demonstrated a chronic drug problem and that she turns to drugs
when she encounters difficulties such as the removal of the children from her home
and the miscarriage of the baby conceived with R.P., (3) sold drugs, (4) received
public intoxication citations, (5) engaged in serial relationships leading to an unstable
family life, and (6) fabricated a story to conceal physical abuse by R.P., with whom
she and the children lived before BCCPS removed the children.

 On the other hand, (1) Doe testified that she had the prospect for another
opportunity to go to a drug rehabilitation facility, (2) cared for, fed, bathed, and saw
to it that M.T. IV attended school, despite her drug abuse; (3) the children were not
injured when BCCPS picked them up; (4) the violence between Doe and R.P. did not
start until after the children had been removed from her home; (5) Doe did not use
drugs in front of the children; and (5) three weeks after the children were picked up,
they were confused, upset, and wanted to be returned to their parents. Overall, this
factor weighs against Doe.

 (i) Excuse for the Acts or Omissions of the Parent

 Doe testified that R.P. forced her her to sell drugs from the home. She also
testified that on one of the occasions when she gave up drug rehabilitation BCCPS's
removing the children from her resulted in her losing hope. She also testified that she
did not have a home because of threats from R.P.

 On the other hand, Doe gave no excuse for (1) her drug addiction, (2) receiving
public intoxication citations, or for not (3) getting and keeping a job, (4) completing
parental classes, and (5) completing personal counseling classes.

 We conclude that the evidence is such that a reasonable jury could form a firm
belief or conviction that the best interest of the children would be served if the trial
court terminated the parent-child relationship between them and Doe. Accordingly,
we hold that Doe's counsel's failure to file a motion for new trial raising factual
insufficiency of the evidence to support the jury's verdict did not harm Doe. 
Consequently, we need not consider the first prong of the Strickland test, whether
Doe's counsel's failure to file a motion for new trial raising factual insufficiency of
the evidence fell below an objective standard of reasonableness. Strickland, 466 U.S.
at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice . . . that course should be followed."); Boyd v.
State, 811 S.W.2d 105, 109 (Tex. Crim. App. 1991) ("[I]f a defendant fails to prove
the pejudice component (the second prong), the court need not address the question
of counsel's performance.").

 We dismiss Doe's motion for new trial for want of jurisdiction because we do
not have authority to consider such motions. See Tex. R. Civ. P. 329b (prescribing
how motions for new trial shall be filed in district and county courts--not courts of
appeals).

4. Failure to File Points of Error for Appeal

 Doe asserts that her trial counsel was ineffective, postjudgment, because he did
not file a statement of points on appeal, thereby barring her from raising any points
on appeal. See Tex. Fam. Code Ann. § 263.405(i) (Vernon Supp. 2006) (precluding
appellate courts from considering any issue that was not specifically presented to trial
court in timely filed statement of points). We note, however, that Doe was able to
pursue her appeal and we have addressed her factual sufficiency points in assessing
her claim of ineffective assistance of counsel above. Doe has thus not been harmed
by her counsel's failure to timely perfect the appeal or preserve a factual sufficiency
review. We cannot conclude, from the record of the abatement hearing in the trial
court, Doe's untimely filed statement of points on appeal filed in this Court, or her
brief, that a reasonable probability exists that, but for her trial counsel's failure to file
a statement of points on appeal with the trial court, the result of this case would be
different. Accordingly, we hold that Doe has not shown that trial counsel's failure
to file a statement of points on appeal prejudiced her in this case. Boyd, 811 S.W.2d
at 109.

 We considered Doe's ineffective assistance of counsel claim because she can
raise it for the first time on appeal without preserving it in the trial court. In re
J.M.S., 43 S.W.3d 60, 64 (Tex. App.--Houston [1st Dist.] 2001, no pet.). We reject
Doe's ineffective assistance of counsel claim because she has failed to satisfy the
second prong of the Strickland test, that is, she has failed to show that but for her
counsel's unprofessional errors, the result of the proceeding would have been
different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2068. We overrule Doe's first
issue.

 In issue two, Doe asserts that the evidence is factually insufficient to sustain
the jury's verdict of termination of the parent-child relationship between her and her
children as being in their best interest. It is unnecessary to consider this issue in light
of our analysis of issue one.

 We affirm the trial court's judgment.


 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.
1. Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp. 2006).
2. Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon Supp. 2006).
3. Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2006).
4. See Tex. Fam. Code Ann. § 161.001(1)(O).