Opinion issued February 25, 2010













 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-09-00447-CV

____________


HELEN NEWSOM, Appellant


V.


DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee






On Appeal from 300th District Court

Brazoria County, Texas

Trial Court Cause No. 45233






MEMORANDUM OPINION

 Appellant, Helen Newsom, challenges the trial court's termination of her
parental rights to her minor children. In her sole issue, Newsom contends that her
court-appointed attorney's performance at trial was so deficient as to constitute "no
assistance" altogether. We conclude Newsom failed to show that her attorney
rendered ineffective assistance of counsel. We affirm the trial court's judgment
terminating the parent-child relationship between Newsom and her children.Background

 In April 2007, the Texas Department of Family and Protective Services
("DFPS") received a referral regarding the welfare of Newsom's children, A.S., a boy
born in 2003, E.S., a girl born in 2004, and A.S., a girl born in 2005. Newsom was
under the influence of cocaine in the presence of the children. During this episode,
in which the children were home alone with her, Newsom was throwing dishes and
eventually passed out for a period of time. The children's father, Justin Saathoff, was
not present at the time because he was incarcerated.

 Following this incident, Newsom signed a "Child Safety Evaluation and Plan"
whereby she agreed to remain drug and alcohol free, to take a drug assessment, and
to subject herself to random drug and alcohol testing, among other requirements. The
document also stated that "failure to follow this plan may result in [DFPS] taking
further action." Newsom agreed to voluntary placement of her children with friends
of the family with the understanding that if she successfully completed the services
offered by DFPS, she would eventually be reunited with the children.

 In November 2007, DFPS filed its Original Petition in a Suit Affecting the
Parent-Child Relationship and obtained temporary orders assuming custody of the
children on the basis that Newsom (1) continued to test positive for cocaine and
marijuana, (2) failed to complete a drug and alcohol assessment, and (3) arrived under
the influence of drugs at her supervised visitations with the children. In December
2007, Newsom was appointed counsel, who answered the lawsuit with a general
denial. 

 Newsom was evaluated by the Gulf Coast Center in January 2009. The
evaluation's result was that she met "the criteria indicative of a severe to extreme
substance abuse problem." According to the evaluation, Newsom had tested positive
for cocaine and marijuana, and admitted using the substances. 

 In February 2009, DFPS filed a motion to compel Newsom's trial counsel to
respond to its discovery requests. Nine days later, trial counsel responded to DFPS's
request for disclosure, request for production, and interrogatories, explaining that the
"delay in submission of these completed documents was because I was unable to
locate [Newsom] until February 23, 2009." Counsel also filed a written motion for
continuance representing that "this continuance is not sought for delay or to
inconvenience the parties or the Court, but that justice may be done." The motion for
continuance, however, did not list any specific grounds for the motion. Furthermore,
although the trial court clerk sent notice for a hearing on the motion for continuance,
Newsom's attorney later declined to move forward with this motion, so it was never
heard by the trial court, nor ruled upon.

 Prior to the beginning of the jury trial, the trial court granted DFPS's motion
in limine. After a jury was selected, Newsom's attorney made an opening statement
explaining that Newsom completed some of the required services including parenting
classes, that she repeated drug treatment due to a desire to succeed to get her children
back, and that she loved her children. He explained that it was in the best interest of
the children to be with their mother, that the children were not with her during the
times she lived a transient lifestyle, and that it was DFPS's burden to prove its
allegations. 

 At trial, DFPS presented evidence that termination was proper because
Newsom was unable to remain drug and alcohol free during the time she was working
with DFPS for the return of her children from voluntary placement. DFPS also
presented evidence that Newsom refused to participate in treatment for her substance
abuse issues, failed to complete other services ordered by DFPS, and lived a transient
lifestyle that was not in the best interest of the children. 

 DFPS called eight witnesses, beginning with Newsom. During his portion of
the questioning, Newsom's attorney asked her about her son that passed away at three
years of age in 2005 due to encephalopathy, a form of brain deterioration. Newsom
told the jury that her son's death was "really emotional" and "overwhelming" and that
she "self-medicated" using drugs. Newsom also testified that Saathoff went to jail,
leaving her and her remaining three children alone during this time. 

 Saathoff also testified. Newsom's attorney asked him about Newsom's ability
to "cope" following the death of her son and Saathoff's repeated incarcerations. 
Saathoff told the jury that these circumstances made it difficult for Newsom to control
her grief. Saathoff also told the jury that he and Newsom intended to renovate the
house for the children once they received the children back from voluntary placement. 

 Officer David Cisneros testified that he responded to a domestic violence call
at Newsom's house. Cisneros explained during Newsom's attorney's cross-examination that Newsom was reluctant to pursue assault charges against Saathoff
because she was afraid of Saathoff, and needed his financial support to assist her with
her son's disability. 

 Newsom's attorney cross-examined Dr. Paul Damin, Ph.D., a clinical
psychologist who administered Newsom's psychological examination on behalf of
DFPS. Damin determined that (1) Newsom's "test results also placed her at high risk
of engaging in abusive parenting behaviors" and (2) Newsom "is in need of long-term
substance abuse treatment." Trial counsel pointed out that Damin had only met with
Newsom one time for a period of two hours and that he never met with Newsom's
children. Trial counsel also elicited testimony from Damin that the death of
Newsom's son, and the abuse and subsequent abandonment by Saathoff, could be the
cause of Newsom's clinical depression and related disorders.

 Newsom's attorney cross-examined Ashley Strawder, the Family-Based
Services Worker who was assigned Newsom's case. Strawder testified that her job
was to work with Newsom in order to deal with her substance abuse issues and her
depression concerning the death of her son. Trial counsel elicited testimony that
Newsom's decision to put the children in voluntary placement indicated that Newsom
wanted them to be safe. Counsel also elicited testimony that relapses are not
uncommon for an addict in recovery and that Newsom voluntarily checked herself into
treatment. 

 Next, trial counsel cross-examined Regina Carrillo, a licensed therapist with
Intervention Resources. Carrillo testified that Newsom had been referred to her by
DFPS for counseling. Carrillo testified that a combination of psychiatric help, which
Newsom was not provided, and therapy, would have been helpful to Newsom. Finally,
trial counsel elicited Carrillo's opinion that Newsom was a candidate for rehabilitation
and that she completed half her sessions. 

 Trial counsel cross-examined Tammi Porter, a caseworker for DFPS. Porter
explained that in her position she ensures that families complete their court-ordered
services, she visits the children monthly, and she maintains contact with the parents. 
Trial counsel elicited Porter's testimony that Newsom completed her parenting classes,
psychological evaluation, drug assessment, and that she submitted herself to individual
counseling. Trial counsel also elicited the fact that Newsom received four certificates
of completion while she was in inpatient treatment. Finally, trial counsel elicited
Porter's testimony that Newsom and Saathoff had made renovations to the house in
preparation of the children's return from voluntary placement. 

 DFPS supervisor Sharon McNair testified without objection to hearsay
statements relaying Newsom's sister's feelings about Newsom. Following the
testimony, the trial court struck it in its entirety because McNair had violated "the
rule" that disallows witnesses from observing the testimony of other witnesses. The
trial court instructed the jury to disregard her testimony in its entirety. The trial court,
however, also admonished Newsom's trial counsel that he should have objected to the
testimony earlier.

 After DFPS rested, Newsom's attorney called two witnesses. First, Martha
Luna testified that she took custody of two of Newsom's children from May 2007 to
April 2008. Luna stated that the children "love [Newsom] to death; and she loves
them" and that even when Newsom was impaired during her visits she "still did good
with the kids." Luna told the jury that Newsom was never violent with the children,
did not abuse them, and that she did not feel the children were endangered around
Newsom. She stated that with the appropriate help she felt Newsom could overcome
her substance abuse problem. 

 Next, trial counsel called Newsom to the stand. Newsom testified that she had
plans to check into a treatment center following the conclusion of the termination
proceedings and that she was willing to make a "life change." Newsom also stated
that she had plans to get a job and a car. Finally, Newsom told the jury that she
regretted leaving treatment. 

 Following the testimony presented to the jury, Newsom's attorney made a
closing argument emphasizing Newsom's willingness to voluntarily subject herself to
drug and alcohol treatment and to place the children with friends until she could
successfully get sober. Trial counsel also argued that DFPS failed to meet its burden
of proof that Newsom endangered her children. 

 In accordance with the jury's verdict, the trial court signed a judgment
terminating Newsom's parent-child relationship as to all three children and appointed
DFPS as the children's sole managing conservator. The grounds for termination were
found by clear and convincing evidence under subsections (D), (E), and (O) of Family
Code section 161.001(1), as well as a finding that termination was in the children's
best interest. See Tex. Fam. Code Ann. § 161.001 (Vernon 2009). (1)

 On March 11, 2009, Newsom's trial attorney sent her a letter explaining she
had a right to appeal, could obtain appointed counsel for the appeal, and that he would
remain on the case until another attorney was named. Trial counsel subsequently filed
a motion for new trial. The motion for new trial asserted (1) the evidence was
insufficient to support the jury's answers to the questions pertaining to Newsom's
knowing placement of the children in conditions that endangered their well-being, her
failure to comply with the provisions of the court order setting forth the necessary
requirement to ensure the return of the children, and the best interest of the children;
(2) the trial court erred by allowing the motion in limine that did not allow Newsom
to mount a defense; (3) the trial court erred by denying counsel's motion for
continuance because counsel did not have enough time to converse with his client; and
(4) the trial court erred by allowing DFPS supervisor Sharon McNair to give improper
and prejudicial testimony largely consisting of hearsay. After it heard arguments
concerning Newsom's motion for new trial, the trial court denied the motion. Standard of Review

 The Texas Family Code requires the appointment of counsel to represent an
indigent parent who responds in opposition to a suit filed by a governmental entity
in which termination of the parent-child relationship is requested. Tex. Fam. Code
Ann. § 107.013(a)(1) (Vernon Supp. 2009). The Texas Supreme Court has held that
this statutory right to counsel "embodies the right to effective counsel." In re M.S.,
115 S.W.3d 534, 544 (Tex. 2003). 

 When an indigent parent claims he was actually or constructively denied
counsel in that counsel failed to subject the prosecution's case to meaningful
adversarial testing, we apply the test in United States v. Cronic. See Valencia v.
DFPS, No. 01-08-00345-CV, 2010 WL 457494, *5-*6 (Tex. App.--Houston [1st
Dist.] February 11, 2010) (citing United States v. Cronic, 466 U.S. 648, 654-55, 104
S. Ct. 2039, 2044 (1984)). Actual or constructive denial of the assistance of counsel
altogether is legally presumed to result in prejudice. Strickland, 466 U.S. at 692, 104
S. Ct. at 2067; see also Cronic, 466 U.S. at 659, 104 S. Ct. at 2047.

 When, however, an indigent parent challenges the effectiveness of his attorney,
we analyze the case using the test enunciated in Strickland, U.S. 466 at 687, 104 S. Ct.
at 2064. Under the Strickland test, the indigent parent must show that (1) his
attorney's performance was deficient and fell below an objective standard of
reasonableness and (2) the deficient performance prejudiced his defense. Id. 
"[E]rrors, omissions, or strategic blunders in the context of an active adversarial
representation are analyzed under the Strickland standard." Childress v. Johnson, 103
F.3d 1221, 1229 (5th Cir. 1997) (internal citations omitted). There is a strong
presumption that counsel's conduct falls within the wide range of reasonably
professional assistance, including the possibility that counsel's decision was based on
strategy. Doe v. Brazoria County Child Protective Servs, 226 S.W.3d 563, 572 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). An allegation of ineffective assistance
must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Id.

Cronic Analysis

 In her sole issue, Newsom argues counsel "provided no assistance to [Newsom]
in the trial of this case." See Cronic, 466 U.S. at 654-55, 104 S. Ct. at 2044. The
record, however, does not establish Newsom's attorney entirely failed to subject the
prosecution's case to meaningful adversarial testing. See id. Newsom's attorney
answered the lawsuit, answered discovery, explained that his tardiness in responding
to the discovery was due to an inability to locate Newsom, filed a written motion for
continuance, made an opening statement, cross-examined the State's witnesses, called
two witnesses, made a closing statement, and filed a motion for new trial. The record
also demonstrates he had a strategy to show Newsom had completed some of the
treatment and had a good reason--the death of her son, and physical abuse and
abandonment by her husband--for her depression and inability to escape addiction
from drugs and alcohol. Furthermore, the record shows Newsom's trial attorney
elicited Newsom had acted in the interest of her children by voluntarily agreeing to
their placement elsewhere while she received treatment, and he argued that it was in
the children's best interest to remain with their mother. Thus, the record shows
Newsom's attorney did subject the State's evidence to meaningful adversarial testing. 
See id. Having found that trial counsel's representation does not fall under the
purview of the Cronic standard, we now analyze Newsom's ineffective assistance of
counsel claim under the two-pronged Strickland standard. See Strickland, 466 U.S.
at 684-87, 104 S. Ct. at 2063-64. 

First Prong of Strickland Analysis

 Also within her sole issue, Newsom contends her attorney rendered ineffective
assistance of counsel. In her complaint that trial counsel was ineffective, Newsom
specifically points to his actions concerning (1) discovery, (2) the motion for
continuance, (3) the motion in limine, (4) testimony by Strawder, (5) testimony by
McNair, and (6) the Texas Rules of Evidence. 

 1. Discovery

 Newsom contends her counsel was deficient because he did not timely respond
to DFPS's discovery requests until five days before trial following a motion to compel,
failed to provide an explanation for his failure to timely respond to discovery, and did
not request an enlargement of time to respond. The record shows, however, that trial
counsel explained that the reason trial counsel did not timely respond to the discovery
request was because he could not locate Newsom until after the due date for the
discovery. The record shows that after Newsom became accessible to her attorney, the
attorney did respond to the discovery requests. On appeal, Newsom does not explain
how she may have benefitted by an enlargement of time to respond to discovery, nor
has she shown that any of her favorable evidence was excluded due to the discovery
responses given. We conclude Newsom has failed to show that her attorney's
performance fell below an objective standard of reasonableness. See, e.g., Mares v.
State, 52 S.W.3d 886, 891 (Tex. App.--San Antonio 2001, pet ref'd) (holding trial
counsel may decide not to file pretrial motions as part of trial strategy).

 2. Motion for Continuance

 Newsom asserts that, although the trial court prompted her attorney to offer his
motion for continuance, counsel did not present the motion to the court. Newsom
contends counsel complained of the trial court's failure to grant his motion for
continuance in the motion for new trial and that this shows the continuance was
needed. In the motion for new trial, Newsom's attorney states he wanted the motion
for continuance to have more time to converse with his client. Nothing in the record,
however, explains what more time to converse with Newsom would achieve, and in
this appeal, Newsom does not explain what would have been achieved by a motion for
continuance. Furthermore, the motion for continuance itself does not list any reasons
for the need for a continuance. We presume Newsom's attorney had a strategy in not
pursuing the motion for continuance after he filed it and then using that as a ground
for requesting a new trial. See Doe, 226 S.W.3d at 572. We conclude that Newsom
has failed to show that her trial attorney lacked a strategy in his decisions concerning
the motion for continuance. See In re M.S., 115 S.W.3d 534, 549 (Tex. 2003) (citing
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).

 3. Motion in Limine

 With regard to the motion in limine, Newsom asserts that counsel was deficient
in failing to understand its meaning. Newsom contends that counsel's failure to
understand the nature of a motion in limine is reflected in his motion for new trial:

 Attorney for Petitioner filed a Motion-in-Limine prohibiting
Respondent from presenting a valid defense . . . . Since Respondent
was unable to marshall an adequate defense without presenting any
evidence . . . the Judge's grant [sic] of the Motion . . . caused
irreparable harm to the Respondent's case.

 

 The court abused its discretion in allowing Petitioners'
Motion-in-Limine because not allowing Respondents to mount a
defense on the very questions of law that were to be submitted to the
jury, inhibited the presentation of the merits and was unjust to
Respondents.

 On the date of Newsom's jury trial, DFPS presented the court with its motion
in limine, seeking to prohibit Newsom and her counsel from offering certain matters
into evidence without first obtaining a ruling outside of the jury's presence. Those
matters include:

 1. Any witness Newsom did not name and fully identify in
response to DFPS's requests for disclosure;

 

 2. Any fact, theory, or contention not disclosed by Newsom
in response to DFPS's requests for disclosure;

 

 3. Any fact, theory, or contention not supported by the
pleadings;

 

 4. Any testimony, report, or opinion of any expert not
completely identified by Newsom in response to DFPS's
requests for disclosure.

 

 5. Any attempt in the presence of the jury to seek or request
DFPS's attorneys to produce documents, to stipulate to
any fact, or to make any agreement;


 6. Any mention of the probable testimony of any witness
who is absent, unavailable, not called, or not allowed to
testify in the case;

 

 7. Any reference to any statement allegedly made by DFPS
which was not produced by Newsom in response to
DFPS's requests for disclosure;

 

 8. Any reference to the best interest of the children other
than those responses outlined in Newsom's responses to
DFPS's Request for Interrogatories and Requests for
Disclosures;

 

 9. Any reference to DFPS's filing of the motion in limine.


 On appeal, Newsom suggests that her trial attorney misunderstood the motion
in limine by believing it meant it was an evidentiary ruling, as opposed to merely a
ruling requiring him to approach the bench before broaching the subjects in the
motion. The record does not support that contention. At best, the record shows that
in presenting the motion for new trial, counsel was making the strongest arguments
he could to challenge the trial court's ruling on the motion in limine. Without
anything further in the record to show the reason for counsel's actions, we must
presume that trial counsel was exercising reasonable professional judgment. See 
Rivera v. State, No. 04-99-00428-CR, 2000 WL 770803 at *3 (Tex.App.--San
Antonio June 14, 2000, no pet.) (holding attorney's alleged incorrect view of a motion
in limine was arguably a strategic effort, and therefore did not overcome strong
presumption of reasonableness). Thus, Newsom has failed to show that her trial
attorney's actions as to the motion in limine fell below an objective standard of
reasonableness. See M.S., 115 S.W.3d at 549.

 4. Hearsay by Ashley Strawder

 Newsom contends her counsel failed to lodge objections to harmful hearsay
evidence offered by DFPS caseworker Ashley Strwader. Strawder testified that
Newsom was intoxicated at one of her visits with the children. During cross-examination, however, Strawder stated that the children's caregiver had told Strawder
that Newsom was intoxicated. Newsom asserts trial counsel was ineffective by failing
to object to this hearsay testimony and failing to seek an instruction for the jury to
disregard it. See Tex. R. Evid. 614. 

 An attorney can reasonably decide not to object to inadmissible evidence. See,
e.g., Lyons v. McCotter, 770 F.2d 529, 534 (5th Cir. 1985) (noting "[t]o pass over the
admission of prejudicial and arguably inadmissible evidence may be strategic . . .").
Here, the record demonstrates the trial strategy was not to deny past use of alcohol and
drugs, but instead to show that Newsom was acknowledging her mistakes and
attending treatment for the problem. Nonetheless, the record is silent with regard to
trial counsel's strategy and reasoning in his approach to Strawder's testimony. In view
of the strong presumption that effective assistance was rendered and that reasonable
professional judgment was exercised in making decisions, and in the absence of any
record to refute that presumption, we reject Newsom's claim that trial counsel was
ineffective in failing to object to Strawder's testimony. See M.S., 115 S.W.3d at 549.

 5. Hearsay by Sharon McNair 

 Newsom also claims that counsel was deficient by failing to object to the large
amount of hearsay testimony offered by DFPS supervisor Sharon McNair. Without
objection by any party, McNair testified that Newsom's sister said she would not take
the children. Newsom's sister said she "was afraid for her own children's safety
because of the unstableness and volatility" of Newsom and Saathoff. McNair said
Newsom's sister explained that at two years of age, A.S. was hiding food in her room. 
 McNair said that "usually indicates that they were not being fed regularly, and they
are hungry." McNair testified that Newsom's sister described the last time she visited
Newsom, as follows:


 She indicated to me that when she arrived that Justin Saathoff was out 
in the front yard fighting with his friend . . . and that she heard the
children crying and screaming from the home. So, she went into the
home and found [Newsom] handcuffed to the bed. And she indicated
that she instructed [Saathoff] to unhandcuff [Newsom] and that they
needed to stop this behavior and get some help.


 McNair testified that Newsom's sister believed Newsom's children could not
be placed with any family members because Newsom and Saathoff would cause
problems for the relatives. 

 The record reveals that the day after McNair's testimony, Saathoff's trial
counsel objected to it in its entirety as hearsay. In overruling the hearsay objection, the
trial court admonished Newsom's counsel that he "clearly" should have objected to
McNair's testimony, noting "[t]hat is your job to do that, and you didn't." 
Nonetheless, the trial court struck McNair's testimony in its entirety because McNair
violated "the rule" given to the witnesses to exclude themselves from the courtroom. 
Although the record is silent with regard to trial counsel's strategy and reasoning in
his failure to object to McNair's testimony, we conclude that no reasonable trial
strategy could consist of allowing the admission of such prejudicial testimony. Thus,
counsel's conduct was, in this instance, "so outrageous that no competent attorney
would have engaged in it." See M.S., 115 S.W.3d at 545. 6. Familiarity with the Texas Rules of Evidence

 Newsom asserts that counsel was deficient because he lacked familiarity with
the Texas Rules of Evidence. Newsom points to particular instances that demonstrate
counsel's unfamiliarity with (a) proper objections; (b) use of documents not in
evidence; and (c) relevancy of evidence.

 a. Proper Objections

 Newsom claims that counsel made a nonsensical objection in response to a
question by DFPS to Newsom regarding whether she remembered a residence in
which she lived. The record shows the following:

 Trial counsel: Your Honor, is there stipulations to be made- my
client's been asked and answered. I don't know where this is all
going.


 Trial court: Is that an objection?


 Trial counsel: Yes, it's an objection.


 Trial court: I'll overrule that at this time.

 Although "asked and answered" is not in the Rules of Evidence, it is a way
of objecting to repetitious questioning. The record fails to show that no reasonable
attorney would make this objection. 

 b. Use of Documents Not in Evidence

 Newsom also points to the following portion of the record where DFPS
questioned Newsom from a document that had not yet been admitted into evidence:

 DFPS: Do you recognize that?

 Newsom: Yes, no. I've never seen this.

 DFPS: Do you recognize that it says "Criminal Docket Sheet" right
here?


 Newsom: Yes.

 DFPS: And do you recognize that it's a charge of assault?

 Newsom: Where? Oh, yes, ma'am.

 DFPS: And, do you recognize that its related to Justin Saathoff?

 Newsom: Yes, ma'am.

 Trial counsel: Your Honor, I would like to object to this. This is not a
charge on my client. This is a charge on somebody else, and my client
is being barraged on these questions on this particular- I have no idea
what she can answer on this.

 

 Trial court: Right now, it's something in writing that's not been
admitted.


 Trial counsel: So, let's admit it.


 Trial court: So, at this point, I'll sustain the objection subject to it being
admitted. Although he did not use the word "relevancy," trial counsel's speaking
objection plainly challenges the relevancy of the evidence by pointing out the charge
concerns someone else and that Newsom could not answer questions about it. The
trial court sustained the objection. We conclude the record fails to show trial counsel
did not understand the Rules of Evidence as Newsom suggests in this appeal. 

 c. Relevancy of Evidence 

 Newsom asserts that her attorney failed to understand the concept of relevancy. 
The first instance Newsom complains about occurred when Newsom was presented
with the Family Service Plan she signed. The record shows:

 Trial court: . . . Any objections?


 Trial counsel: Your Honor, was this - was it the Petitioner's intention
to admit this from the beginning of the trial?


 Trial court: When you say, "beginning of the trial," you mean the
beginning of the questioning?


 Trial counsel: No, from yesterday.


 Trial court: I don't know. I can't answer that question.


 DFPS: Your Honor, that's not relevant as there was no discovery sent. 
I had no obligation.


 Trial court: Is there any objection?


 Trial counsel: No objection.


 The second instance Newsom complains of occurs when Newsom was being
cross-examined by the children's ad litem attorney, who elicited the fact that
Newsom's father is the sole custodian of Newsom's eldest daughter. Newsom
contends that although her counsel lodged no objection to this testimony, Newsom
herself questioned the relevancy of the evidence and its prejudicial effect. Newsom
asserts that her counsel then compounded the prejudicial effect of the ad litem's line
of questioning by eliciting from Newsom that she voluntarily terminated her parental
rights to her daughter when her daughter was two. The record shows:

 Ad litem: Do you have any other children other than the four that
we've discussed today?


 Newsom: Yes.


 . . . .


 Ad litem: Where does that child reside?


 Newsom: With my sister in Sweeny.


 Ad litem: And how old is the child?


 Newsom: Ten.


 Ad litem: And when was the last time the child resided with you,
ma'am?


 Newsom: I think that's irrelevant. I'm not going into that. Sorry.


 Ad litem: Objection, nonresponsive.


 Trial court: Answer the question, ma'am.


 Newsom: My dad has custody of her. She has nothing to do with this
case.

 The record again provides no discussion of trial counsel's purported errors
and contains no discernible explanation of the motivation behind trial counsel's
objections or failure to object. Nor does the record contain any discussion of
counsel's trial strategy. From this testimony, the jury learned Newsom had a 10-year-old child who was in the custody of Newsom's father. A plausible strategy is that
counsel wanted to show that Newsom still had a relationship with the child who was
living apart from her. Without counsel's explanation, however, we cannot conclude
counsel did not have sound strategic reasons for his actions. In view of the strong
presumption that effective assistance was rendered and that reasonable professional
judgment was exercised in making significant decisions, and in the absence of any
record to refute that presumption, we reject Newsom's claim that trial counsel was
ineffective. Id. at 549. Except for testimony by McNair, we hold Newsom has failed
to establish the first prong of Strickland. See Strickland, 466 U.S. at 689, 104 S. Ct.
at 2065.

Second Prong of Strickland Analysis Although we have determined that most of the complained of actions by
Newsom's attorney could have been based on reasonable trial strategy, at least one of
his actions could not. We, therefore, address the second Strickland prong that asks
whether the deficient performance prejudiced the defense. Id. at 694, 104 S. Ct. at
2068. In reviewing the record to determine harm, the evidentiary burden in such a
case is "clear and convincing" evidence. In re M.S., 115 S.W.3d 534, 550 (Tex. 2003).

 As previously noted, after finding that McNair violated the rule given to the
witnesses to exclude themselves from the courtroom, the trial court struck McNair's
testimony in its entirety and instructed the jury to disregard it. We presume the jury
followed the trial court's instructions and disregarded the testimony. See Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because the jury was required to
disregard McNair's testimony, the record does not affirmatively show a reasonable
probability that, but for the conduct of Newsom's counsel, "the result of the
proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at
2068. Although we have determined the other complained of actions could have been
reasonable trial strategy, we also note that no evidence shows that these actions
prejudiced the defense. More specifically, nothing in the record shows how earlier
responses to the discovery or more time to respond to the discovery or to prepare for
trial would have changed the result. Similarly, the record fails to show any evidence
introduced or not introduced due to a motion in limine ruling. Furthermore, given the
extensive evidence concerning Newsom's abuse of drugs, evidence that the children's
caregiver saw Newsom intoxicated would have had a minimal effect in this case. 
Finally, admission of evidence concerning a child voluntarily given up by Newsom
is evidence that could have been seen by the jury as a parent acting in the best interest
of that child. The complained of actions by trial counsel, even if true, would not have
changed the jury's finding that termination was supported by clear and convincing
evidence. We hold Newsom has failed to establish the second Strickland prong. See
Id. at 694, 104 S. Ct. at 2068. We overrule Newsom's issue.

Conclusion

 We affirm the trial court's judgment terminating Newsom's parental rights.



 Elsa Alcala

 Justice

Panel consists of Chief Justice Radack, Justices Alcala and Higley.
1. See Tex. Fam. Code. Ann. § 161.001(1)(D)("The court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence . . . that
the parent has . . . knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well being of 
the child."); (E) (". . . engaged in conduct or knowingly placed the child with persons
who engaged in conduct which endangers the physical or emotional well-being of the
child."); (O) (". . . failed to comply with the provisions of a court order that
specifically establishes the actions necessary for the parent to obtain the return of the
child who has been in the permanent or temporary managing conservatorship of the
Department of Family and Protective Services for not less than nine months as a result
of the child's removal from the parent under Chapter 262 for the abuse or neglect of
the child.").