Affirmed and Memorandum Opinion filed April 8, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00299-CV

___________________

 

In the Interest of T.G.



 



 

On
Appeal from the 314th District Court

Harris County,
Texas



Trial Court Cause No. 2007-09378J

 



 

 

MEMORANDUM OPINION

            In this accelerated appeal, appellant, Ada G.,
challenges the trial court’s decree terminating her parental rights to her
minor child, T.G.  In five issues, appellant contends the evidence is legally
and factually insufficient to support (1) the grounds for termination under Texas
Family Code subsections 161.001(E), (L), (N), and (O) and (2) the trial court’s
best-interest finding in favor of termination.  Because all dispositive issues
are settled in law, we issue this memorandum opinion and affirm.  Tex. R. App.
P. 47.4.




 

I. 
Background

Appellant was
the mother of three children in addition to T.G.—a boy, C.G., and two girls,
J.S.G. and J.A.G.  On June 18, 2007, C.G., then fifteen years old, died of a
seizure at appellant’s home at 4506 Brady Street in Houston.  C.G. had suffered
numerous medical problems including cerebral palsy, a seizure disorder, and
multiple prior abdominal surgeries.  At the time of C.G.’s death, J.S.G. was
almost twelve years old and J.A.G. was almost a year old.

The autopsy
report indicated C.G.’s death was the result of natural causes. Although
appellant told investigators from the Department of Family and Protective
Services (“the Department”) she had prescriptions for treating C.G., she could not
produce that information and was unable to provide the names of medical
providers after 2005.  At the time of C.G.’s death, the home had a number of
safety problems, including lack of hand rails on the stairway, an extremely
loose banister, and a gas water heater placed directly on the floor and open to
the room.  On July 12, 2007, based on allegations of neglectful supervision and
medical neglect of C.G., the Department took J.S.G. and J.A.G. into its care.[1]  Pursuant to
an initial family plan, appellant was required to make repairs and improve
safety in her home, complete a psychological assessment, submit to drug testing,
and obtain employment.

At the time of
J.S.G.’s and J.A.G.’s removal, appellant was pregnant with T.G and was told to
contact the Department after T.G.’s birth.  T.G. was born on October 10, 2007,
but appellant did not inform the Department.

On October 26,
2007, the Department received a referral.  According to the referral, T.G. lived
with his mother, aunt, two male cousins, and a maternal grandfather.  Both
cousins had criminal histories.  The maternal grandfather, who was the sole
source of income, suffered from diabetes and other health conditions, limiting
his ability to provide care for T.G.  The Department had removed children of
both the mother and the aunt and placed them with a relative.  The home was in the same condition as when appellant’s
other children came into care.  The windows were covered with wooden planks,
there was no working front door, the passage way into the kitchen was partially
blocked by a large chest, the kitchen walls and floors were covered with bugs,
and the floors had holes and appeared very unstable.

On October 27, 2007, CPS caseworker and investigator Melvin
Frederick spoke with appellant.  She told him T.G. was fine and there was no
need for him to be taken into custody.  She also told Frederick she did not yet have
employment, missed one drug assessment, and was scheduled for her psychological
examination the following week.  The Department determined the home was still
in great disrepair and appellant had not made any progress toward improvement
of the home or her personal situation.

The Department assumed temporary custody of T.G.  On
October 29, 2007, the Department filed a petition for conservatorship and
termination of parental rights, and the court held an emergency hearing and
named the Department as T.G.’s temporary sole managing conservator.  T.G. was
put into a kinship placement with appellant’s other two children at the home of
Gracie G., an alleged paternal aunt.  T.G. began living with Gracie when he was
two weeks old.

During the
pendency of the case involving T.G., appellant’s parental rights to J.S.G. and
J.A.G. were terminated under Texas Family Code subsections 161.001 (D) and 161.001(O). 
On May 7, 2009, this court affirmed the decree, holding the evidence was
legally and factually sufficient to support termination under 161.001(O).[2]

On November 8,
2007, pursuant to Texas Family Code section 263.106, the court ordered
appellant to comply with each requirement in the Department’s family service
plan during the pendency of the suit.  On January 8, 2008, the Department filed
a family service plan with the court.  Under the plan, appellant was to “clear
up” her criminal history, participate in visitation twice a month, and attend
court hearings.  The same day, the trial court signed an order in which it
specifically approved the service plan recommendations, adopting them as if set
out verbatim in its order.  The trial court also signed an additional temporary
order for return of the child in which appellant was required to complete a
psychological examination, participate in counseling as recommended, complete
parenting classes, complete a drug and alcohol assessment, complete random drug
tests, remain drug free, refrain from engaging in criminal activity, maintain
stable housing, maintain stable employment, and complete all services outlined
in the Department’s family service plan.

Of the services that were the subject of the court’s order,
appellant completed only the psychological examination.  Appellant did not
participate in counseling or complete parenting classes.  Appellant failed a
random drug test in May 2008, testing positive for propoxyphine and morphine.  Appellant
claimed she tested positive for these drugs because she had dental work but
could not provide a dentist’s name or any prescriptions.

On July, 25,
2008, appellant assaulted J.S.G.  According to the criminal complaint, J.S.G.
went to her grandfather’s residence at 4506 Brady Street and argued with appellant. 
Appellant then threw a hair brush, striking J.S.G. in the face, and also grabbed
J.S.G.’s hair, knocking her to the floor.  Finally, appellant hit J.S.G. in the
face with a closed fist.  J.S.G. subsequently freed herself and ran from the
house.  The reporting officer observed J.S.G.’s injuries, including a bruised
lip, scratches to her eye, and a severely bloodshot eye.  J.S.G. was placed in
an emergency shelter.

Appellant was
arrested for injury to a child.  The Department told T.G.’s caregiver that appellant
was no longer allowed to visit T.G. at appellant’s home and that T.G. should be
available for visits only at the office of Child Protective Services (“CPS”).[3]  Appellant did not
arrange for any visits.

On September
5, 2008, pursuant to a plea bargain, appellant pleaded guilty to injury of a
child under fifteen years of age.  The court deferred adjudication and ordered
five years’ community supervision.  Conditions of appellant’s community
supervision included working at suitable employment, submitting to random drug
analyses, following all the stipulations set forth by the Department during her
supervision, participating in anger management and parenting classes, and performing
a total of 200 hours of community service.

On November
14, 2008, Lionel Guerrero, who lived in the same house the Department believed
to be appellant’s residence, was arrested for possession of marijuana.  He pleaded
guilty and received a three-day sentence.

On January 14,
2009, the Department’s caseworker, Latoya Debose, attempted to contact appellant
by certified mail, but the letter was returned unclaimed. On February 19, 2009,
Debose attempted to visit appellant at her residence at 4506 Brady Street, the
same place where Debose had sent the letter.  Debose, however, was unable to approach
the door of the home because there were three dogs loose in the front yard.  A
colleague took photographs of the home, showing boarded and broken windows and
one of the dogs.  Debose placed a family service plan and contact information
in appellant’s mail box and sounded her car horn for about twenty minutes.

On February
25, 2009, the Department filed a permanency progress report with the court.
 In the report, the Department advised the court that appellant made
minimal progress on the family plans of service.  The Department observed appellant
(1) had been arrested and charged in 2008 for injury to her own child, (2) had
not maintained contact with T.G. or the agency, and (3) had her parental rights
to her other two children terminated.  The Department further stated T.G’s current
placement was safe, met all T.G’s needs, and was the same placement as that of
his siblings, thus enabling him to maintain contact with them.  Finally the
Department noted the alleged paternal aunt who had cared for T.G. since he was
two weeks old indicated she wished to adopt T.G.

On February
26, 2009, the Department’s suit for termination of appellant’s parental rights
to T.G. was tried to the bench.  The following three witnesses testified:  Debose,
T.G.’s case worker at the time of trial; Mark Heeg, the child advocate assigned
to T.G.; and Tracey Burns, appellant’s probation department supervisor.[4]  In addition, the
court admitted numerous exhibits, including photographs of C.G. and J.S.G.,
documents related to the charges against appellant and Lionel, and documents
filed during the course of the present termination proceedings.

Debose
testified that T.G. came into care because of the prior abuse and neglect of
C.G.[5]  T.G. was
put into a kinship placement with Gracie G. and had lived there since he was
two weeks old.  According to Debose, appellant had not visited T.G. since July
2008.  Debose believed the lack of visitation was harmful to T.G.’s emotional
well being.  Debose was the caseworker whom appellant would call to arrange a
visit and appellant knew how to contact her.  Appellant, however, never called
Debose to schedule a visit.  Appellant also did not call or write Debose to
inquire about T.G.  DeBose attempted to contact appellant by telephone, but the
numbers were disconnected.  

Debose
indicated that, on two occasions, the previous caseworker was denied access
when she went to appellant’s residence.  Appellant had not allowed the
Department to observe her home since May 2008, and a nephew living in the home
had recently been convicted for marijuana possession.  Debose opined appellant’s
home was not a safe environment for T.G. because of the nephew’s possession of marijuana. 
Debose testified she saw the post-assault pictures of J.S.G. and described the
injuries as serious. 

Debose asked
the court to terminate appellant’s parental rights to T.G. because appellant
failed to comply with her family service plan.  Of the services appellant was
specifically ordered to complete, she completed a psychological examination and
drug and alcohol assessment, but did not participate in recommended therapy,
was discharged from therapy in April of 2008, and did not complete parenting
classes.  Appellant also tested positive for propoxyphine and morphine, and,
although she explained she had dental work, she never gave the Department
information regarding the dentist or prescription.  According to Debose, appellant
did not maintain stable housing or employment.

Debose
testified reasonable efforts were made to return T.G. to appellant, but she failed
to show she could provide a safe home.  The Brady Street address was the last
known address for appellant, but Debose was not sure if she still lived there
or had any place to live.  Appellant did not ask Debose to evaluate any other
residence and did not provide any proof of employment.

Debose also testified
there was a warrant for appellant’s arrest at the time of the trial.  According
to Debose, one of the cousins living at the Brady Street address had a sexual
abuse charge against him 

Finally, Debose
testified that T.G. had remained in the same placement since October 2007 and had
developed a bond with his current caregiver, Gracie G.  The caregiver expressed
an interest in permanent adoption.

Heeg, the
child advocate assigned to T.G.’s case, was the second witness. Heeg testified the
court ordered Child Advocates to do a home study and they tried to complete it
with the information appellant provided.  The last time Heeg visited appellant’s
home was probably in April 2008.  Dogs running around the home prevented him
from visiting on at least two other occasions.

During
November 2007, Heeg visited the home the first time.  Appellant told Heeg that her
father, sister, and her sister’s two teenage sons (Leo and Lionel) lived in the
home.  There were allegations the two teenage sons used drugs.  Heeg did not
witness any direct evidence of drug use but did notice hand-drawn pictures of
marijuana leaves and gang symbols on the walls.

When Heeg
visited the home, appellant’s children had already been removed.  He observed
the home was in general disrepair.  He also observed safety hazards, including extension
cords running from air-conditioning units to plugs and other areas of the home,
making the home unsafe for a toddler.  The floor on the second story would give
way, and he felt as if a person’s foot could go through the floor.  Appellant
did not indicate she believed the house was insufficient for the children and
thought the home was fine.

According to Heeg,
the only item appellant completed on her family service plan—after months of
delay—was a court-ordered psychological examination in April 2008.  Heeg also testified
that appellant knew she was not to commit crimes during the pendency of the
case.

According to
Heeg, appellant visited her children only occasionally and the visits usually occurred
at the Brady Street home where Gracie G. would bring the children to see
appellant.  After she committed the crime of injury to a child, appellant was allowed
to visit T.G. only at the CPS office, and appellant understood that opportunity
was available.

Tracy Burns, appellant’s
probation supervisor, was the third witness.  Burns testified appellant gave
4506 Brady Street as her living address.  She further testified there was a
warrant for appellant’s arrest because she had not reported to the probation department
since December 2008 and did not comply with her conditions of supervision by
taking parenting and anger-management classes and performing community service. 
A motion had been filed to adjudicate her guilt.  Tracy opined that, if appellant
were taken into custody, she would not be able to care for her children.

At the close
of the evidence, the court found that it was in T.G.’s best interest to
terminate appellant’s parental rights and that termination was warranted under
Family Code sections 161.001(E), (L), (N), and (O).[6]  The court decreed
appellant’s parental rights to T.G. terminated and appointed the Department
sole managing conservator.

II. 
Standard of Review

The burden of
proof at trial in parental termination cases is by clear and convincing
evidence.  Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2009); In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002); In re J.I.T.P., 99 S.W.3d 841, 843 (Tex.
App.—Houston [14th Dist.] 2003, no pet.).  “Clear and convincing evidence”
means the measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.  Tex. Fam. Code Ann. § 101.007 (Vernon 2008); In re
J.F.C., 96 S.W.3d at 264.

When
determining legal sufficiency of the evidence in a parental-rights termination
case, we review all the evidence in the light most favorable to the finding “to
determine whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.”  In re J.F.C., 96 S.W.3d at 266; In
re J.I.T.P., 99 S.W.3d at 843–44.  To give appropriate deference to the
factfinder’s conclusions, we must assume the factfinder resolved disputed facts
in favor of its finding if a reasonable factfinder could do so.  In re
J.F.C., 96 S.W.3d at 266; In re J.I.T.P., 99 S.W.3d at 843–44.  We
disregard all evidence that a reasonable fact finder could have disbelieved or
found to have been incredible.  In re J.F.C., 96 S.W.3d at 266; In re
J.I.T.P., 99 S.W.3d at 844.

When reviewing
factual sufficiency in a termination case, we determine “whether the evidence
is such that a factfinder could reasonably form a firm belief or conviction
about the truth of the State’s allegations.”  In re J.F.C., 96 S.W.3d at
266; see In re J.I.T.P., 99 S.W.3d at 844.  We consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that
disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at
266; In re J.I.T.P., 99 S.W.3d at 844.  “If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.”  In re J.F.C., 96 S.W.3d at 266; In re
J.I.T.P., 99 S.W.3d at 844.

            The natural right between parents and their children is one of
constitutional dimension.  Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985); In re U.P., 105 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.]
2003, pet. denied).  Therefore, a court should strictly scrutinize termination
proceedings and strictly construe the involuntary termination statutes in favor
of the parent.  Holick, 685 S.W.2d at 20–21; In re U.P., 105
S.W.3d at 229.

III. 
Legal Standard and Issues Presented

To terminate a
parent-child relationship, a trial court must find by clear and convincing
evidence that (1) the parent committed one or more of the acts specifically set
forth in Texas Family Code section 161.001(1) as grounds for termination, and
(2) termination is in the best interest of the child.  Tex. Fam. Code Ann. §
161.001.  In issues one, two, three, and four, respectively, appellant
challenges the legal and factual sufficiency of the evidence to support the
trial court’s findings appellant committed the acts set forth in subsections
161.001 (E), (N), (L), and (O).  In issue five, appellant challenges the legal
and factual sufficiency of the evidence to support the trial court’s finding
that termination was in T.G.’s best interest.

If, as here,
the trial court terminated the parent-child relationship on multiple grounds
under section 161.001(1), we may affirm on any one ground because, in addition
to a finding termination is in the child’s best interest, only one predicate
violation under section 161.001(1) is necessary to support a termination decree. 
See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003) (“Only one predicate
finding under section 161.001(1) is necessary to support a judgment of
termination when there is also a finding that termination is in the child's
best interest.”); In re E.A.K., 192 S.W.3d 133, 151 (Tex. App.—Houston
[14th Dist.] 2006, pet. denied) (“Because we find that there was legally
sufficient evidence to support one of the predicate findings for termination of
[the father’s] parental rights, we need not address the sufficiency of the
evidence relating to other predicate findings.”).   As discussed below, we conclude
the evidence is legally and factually sufficient to support the trial court’s
finding that appellant constructively abandoned T.G.  See Tex. Fam. Code
Ann. § 161.001(1)(N).  We then consider the legal and factual sufficiency of
the evidence to support the trial court’s finding termination was in T.G.’s
best interest.  See id., § 161.001(2).

 

IV. 
Discussion

A.        Constructive
Abandonment

In issue two,
appellant argues the evidence was legally and factually insufficient to support
a finding she constructively abandoned T.G.  Before a court may terminate the
parent-child relationship for constructive
abandonment, the family code requires clear and convincing evidence (1) the child has been in the
custody of the Department for at least six months, (2) the Department has made
reasonable efforts to return the child to the parent, (3) the parent has not
regularly visited or maintained significant contact with the child, and (4) the
parent has demonstrated an inability to provide the child with a safe
environment.  Id. § 161.001(1)(N); In re D.T., 34 S.W.3d 625,
633 (Tex. App.—Fort Worth 2000, pet. denied).  Appellant challenges sufficiency
of the evidence on only the third and fourth elements.

Failure to visit regularly or
maintain significant contact.  Heeg testified that, in the period
between T.G.’s October 2007 removal and appellant’s July 2008 assault of
J.S.G., appellant visited her three children “only occasionally,” and “usually
the visits occurred on Brady Street.”  Debose testified that, after the
assault, appellant could visit T.G. only at the CPS office, and, according to
Heeg, appellant understood she could do so.  Appellant, however, did not
contact Debose to arrange for visits and never visited T.G. after July 2008.  Thus,
by the time of trial, appellant had not seen T.G. for almost seven months.  Appellant
never called or wrote Debose to ask about T.G.’s health or well-being. To
Debose’s knowledge, appellant never contacted T.G.’s caregiver to inquire about
T.G.’s well-being.  When Debose attempted to telephone appellant, the numbers were
disconnected and a certified letter Debose sent to appellant was returned unclaimed. 
Thus, the uncontroverted evidence established appellant visited T.G. only
sporadically from October 2007 to July 2008 and did not visit him at all for
the seven months thereafter. 

Appellant nevertheless implies Debose’s
inability to contact appellant weighs against her knowledge she could visit T.G.
and thus somehow excuses the lack of contact.  We disagree.  By court order, appellant
was required to provide the Department and the court with her contact information
and to notify them regarding any change of address.

Demonstrated inability to provide a
safe environment for the child.  The February 25, 2009 permanency plan
and permanency progress report, which was introduced into evidence, contained
the following description of the circumstances under which T.G. was removed:

On 10/26/2007 a report came into statewide intake alleging
neglectful supervision of [T.G.] by his mother . . . .  The report states that
[T.G.] (2 week old male) lives with his mother, aunt, two male cousins and a
maternal grandfather.  The mother and aunt both have several children who have
been removed and placed into relative placement.  The initial Family Plan had
included home repairs to improve safety of the immediate environment as well as
a psychological assessment, drug testing, and obtaining employment.  Ada [G.]
was pregnant at the time of the other children’s removal and she was expected
to inform CPS when the child was born.  The maternal grandfather is the only
source of income for this family unit.  The maternal grandfather suffers from
diabetes and other health conditions and would be limited to provide care for
the newborn child.  Teenaged cousins are living in the home and both have
criminal histories (details unknown).  The home environment remained the same
as when [the other children] were removed.  Police took pictures at the time of
removal and nothing was changed from then till [sic] the time when [T.G.] was
born.  The windows are covered with wooden planks, there is no working front
door, and the passage way into the kitchen area is partially blocked by a . . .
large chest.  The kitchen area is covered with bugs, on the walls and floors,
in plain sight.  In an adjacent room the flooring has holes and appears to be
very unstable.  None of the elements of the Family Plan have seen any progress.
 No contact was made with CPS regarding the birth of the child.  The home
remains in great disrepair and the responsible parent has not made any progress
toward improvement of the home or of her personal situation.[7]

There was also evidence appellant failed to
comply with provisions of the family service plan and orders in effect
following T.G.’s removal.  Under the plan and court order filed January 8,
2008, appellant was to “clear up” her criminal history, participate in
visitation twice a month, attend court hearings, complete a psychological
examination and participate in recommended counseling, complete parenting
classes, complete a drug and alcohol assessment, complete random drug tests,
remain drug free, refrain from engaging in criminal activity, maintain stable
housing, and maintain stable employment.  According to Heeg, the only item appellant completed on her family service
plan was a court-ordered psychological examination in April 2008.

Heeg observed safety hazards in the house in April
2008.  These hazards included extension cords running from air conditioning
units to plugs in other areas of the home, weak flooring on the second story,
an open cistern, and dogs running loose in the yard.[8]

Additionally, there was uncontroverted evidence
appellant tested positive for propoxyphine and morphine in May 2008, one of the
nephews living at the Brady Street address was convicted of possession of
marijuana in November 2008, and Heeg observed drawings of marijuana leaves and
gang symbols in the house in fall 2007 or spring 2008.

Having carefully reviewed the entire record under the
applicable standards of review for legal and factual sufficiency, we hold the
Department established by clear and convincing evidence that appellant constructively
abandoned T.G. under family code section 161.001(1)(N).  See In re
R.M., No. 14-02-00221-CV, 2003 WL 253291, at *5 (Tex. App.—Houston [14th
Dist.] Feb. 6, 2003, no pet.) (mem. op.) (holding evidence legally and factually
sufficient to establish constructive abandonment when mother failed to visit child
regularly, maintain significant contact with child, establish a permanent
residence, maintain steady employment, or attend therapy sessions recommended
to her).  Accordingly, we overrule appellant’s second issue.  We need not
address her first, third, and fourth issues, in which she challenges sufficiency
of the evidence supporting the other predicate violations.

B.        Best Interest of
the Child

In issue five, appellant contends the evidence is
legally and factually insufficient to support the trial court’s finding that
termination is in T.G.’s best interest.  There is a strong presumption that
preserving the parent-child relationship is in the best interest of a child.  See
In re J.I.T.P., 99 S.W.3d at 846 (citing Tex. Fam. Code Ann. §§ 153.131(b),
153.191, 153.252 (Vernon 2008)).  The Department bears the burden to rebut this
presumption.  Id. (citing Hall v. Harris County Child Welfare Unit,
533 S.W.2d 121, 122–23 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ)).

The Texas Supreme Court has provided a list of
nonexclusive factors for courts to consider when determining the best interest
of a child, including (1) the child’s desires, (2) the child’s emotional and
physical needs now and in the future, (3) the emotional and physical danger to
the child now and in the future, (4) the parental abilities of the individuals
seeking custody, (5) the programs available to assist these individuals to
promote the best interest of the child, (6) the plans for the child by these
individuals or by the agency seeking custody, (7) the stability of the home or
proposed placement, (8) the acts or omissions of the parent that may indicate the
existing parent-child relationship is not proper, and (9) any excuse for the
acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976); see In re J.I.T.P., 99 S.W.3d at 846.  In this case,
the record contains evidence pertinent to all factors except the first.[9]

The present and future physical and emotional
needs of the child.  T.G.’s maternal grandfather
was the sole source of income, and his health conditions limited his ability to
provide financial support for T.G.’s care.  By the time of trial,
appellant had not provided proof of employment, even
though the family plan required such proof for the return of T.G.’s custody.  See
Doe v. Brazoria County Child Protective Servs., 226 S.W.3d 563, 574 (Tex.
App.—Houston [1st Dist.] 2007, no pet.) (indicating parent’s inability to
maintain employment supported conclusion he was unable to meet children’s
physical needs).

Also, at the time of trial, there was a warrant for
appellant’s arrest, and her probation supervisor testified that, if appellant
were found, she would be taken into custody.  Additionally, the evidence,
discussed above, regarding appellant’s failure to visit T.G. regularly or to
maintain significant contact with him supports the conclusion appellant is
unable to meet T.G.’s emotional needs.

Finally, T.G. has been living with his caretaker, Gracie
G., since he was two weeks old, and a bond has developed.  His two sisters are
in the same household.  According to the Department’s February 2009 permanency
progress report, all T.G.’s needs were fulfilled.

The emotional and physical danger to the child
now and in the future.  In considering constructive abandonment, we
reviewed the evidence supporting appellant’s demonstrated inability to provide
T.G. with a safe environment.  The same evidence supports the factor of
emotional and physical danger to T.G., now and in the future.  See Whitworth
v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (in context of custody dispute, reasoning “an adult’s future conduct may
be somewhat determined by recent past conduct”); see also In re A.C.B.,
198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (recognizing that,
although parent had made some improvement to home conditions, such evidence did
not controvert evidence she exposed children to severe conditions that
endangered child’s physical well-being).

The parental abilities of persons seeking
custody.  Appellant lost custody of her two daughters when the death of
her son, C.G., led to an investigation of medical neglect, and the court
subsequently terminated parental rights to her daughters.  Appellant was placed
on deferred adjudication after she pleaded guilty to assaulting her daughter,
J.S.G.  Finally, appellant did not attend parenting classes as required by the
family service plan.

Available assistance programs. 
Appellant failed to complete tasks outlined in
the family service plan, including counseling, anger management, and remaining
drug free.  See In re M.R., 243 S.W.3d 807, 821 (Tex.
App.—Fort Worth 2007, no pet.) (recognizing parent’s
failure to comply with family service plan may be factor, among others, supporting
best-interest finding).  Debose testified that she was unable to contact appellant
after several attempts, and appellant was noncompliant.  See In
re J.I.T.P., 99 S.W.3d at 847 (considering
parent’s uncooperativeness and failure to complete counseling services in
determining best interest of child).

Plans for the children.  The Department
recommended the children remain permanently in relative placement with Gracie G. 
According to a caseworker report filed October 29, 2007, Gracie expressed a
desire to keep T.G. permanently, if necessary.  At Gracie’s home, T.G. will be
with his older siblings, who already reside there.  Additionally, Gracie works
from her home and can care for T.G. without the necessity of daycare services. 
She is not receiving any government assistance and has no criminal or CPS
history.  Furthermore, T.G. has established a bond with Gracie.  See In re
S.N., 272 S.W.3d 45, 53, 55 (Tex. App.—Waco 2008, no pet.) (comparing
parents’ lack of plans for child with foster parents’ ability to provide a safe
and stable home).

Stability of the home or proposed placement. 
As discussed above, appellant has not shown that she is able to provide a
safe living environment for the children.  Evidence of the hazardous condition
at her listed home and the criminal activity of appellant and other occupants
weigh in favor of the trial court’s best interest finding.  In contrast, Gracie
is meeting T.G.’s needs and would continue to do so in the future. 
Additionally, appellant has conceded that, according to Debose, T.G.’s current
placement is nurturing and caring.  See In re J.I.T.P., 99 S.W.3d at 847
(observing trial court could have considered comparative stability of
parents’ and foster family’s homes).

Acts or omissions of the parent.  Appellant
failed to complete the court-ordered services to regain custody of her
children.  The evidence indicated appellant used illegal drugs, medically
neglected her first child, assaulted another child, exposed the children to
hazardous conditions in the home, and allowed the children to live in a home
with one individual convicted of a sexual crime against a child and another individual
convicted of drug possession.  Additionally, as discussed above,
appellant never visited her children after visitations in her home were
terminated.  See Dowell v. Dowell, 276 S.W.3d 17, 22 (Tex. App.—El
Paso 2008, no. pet.) (concluding failure to exercise visitation rights with
children on regular basis before incarceration is relevant to Holley
factor of acts or omissions of parent).

Any excuses for the acts or omissions committed
by the parent.  Appellant did not testify at the termination trial. 
She admits there is no evidence supporting any justification for the felony
injury to J.S.G.

She refers this court to the comment in the autopsy
report indicating C.G.’s death was due to natural causes.  According to the
Harris County Medical Examiner’s supplemental report, however, C.G. missed
several appointments after surgery at Memorial Hermann Children’s Hospital on
June 11, 2003, and appellant did not have the medication C.G. needed the day he
died.

In sum, there was substantial, virtually
uncontroverted, evidence supporting eight of the nine Holly factors.  Having
carefully reviewed the entire record under the applicable standards of review
for legal and factual sufficiency, we hold the Department established by clear
and convincing evidence that termination was in T.G.’s best interest.  We
therefore overrule appellant’s fifth issue.

 

V.  Conclusion

Having concluded the evidence is legally and
factually sufficient to support a finding of one predicate violation and a
finding that termination is in T.G.’s best interest, we affirm the judgment.

 

                                                                                                                                                                                                                                                

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Seymore, and Brown.

 









[1] The date of J.S.G.’s and
J.A.G.’s removal may be found in In re J.S.G., No. 14-08-00754-CV, 2009
WL 1311986, at *2 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.).





[2] In re J.S.G., 2009
WL 1311986, at *1, 7.





[3] CPS is a division of the
Department.





[4] Lloyd Culp, the attorney
for the unknown father, also testified, but his testimony is not relevant to
the appeal.





[5] The testimony is unclear
on whether risks in the home environment and presence in the home of an older
cousin charged with sexual abuse were also factors in T.G.’s removal from the
home or whether they were factors only in removal of J.S.G. and J.A.G.





[6] The court may order termination of the parent-child
relationship if the court finds by clear and convincing evidence:

            (1) that the
parent has:

            . . . 

            (E)
engaged in conduct or knowingly placed the child with persons who engaged in
conduct which endangers the physical or emotional well-being of the child;

            . . .

            (L)
been convicted or has been placed on community supervision, including deferred
adjudication community supervision, for being criminally responsible for the
death or serious injury of a child under the following sections of the Penal
Code or adjudicated under Title 3 for conduct that caused the death or serious
injury of a child and that would constitute a violation of one of the following
Penal Code sections:

                        . .
.

            (ix)
Section 22.04 (injury to a child, elderly individual, or disabled individual);

                        . .
.

            (N)
constructively abandoned the child who has been in the permanent or temporary
managing conservatorship of the Department of Family and Protective Services or
an authorized agency for not less than six months, and:

            (i)
the department or authorized agency has made reasonable efforts to return the
child to the parent;

            (ii)
the parent has not regularly visited or maintained significant contact with the
child;  and

            (iii)
the parent has demonstrated an inability to provide the child with a safe
environment;

            (O)
failed to comply with the provisions of a court order that specifically
established the actions necessary for the parent to obtain the return of the
child who has been in the permanent or temporary managing conservatorship of
the Department of Family and Protective Services for not less than nine months
as a result of the child's removal from the parent under Chapter 262 for the
abuse or neglect of the child . . . .

Tex. Fam. Code Ann. § 161.001(1) (Vernon Supp. 2009)

 





[7] This section of the
permanency plan tracks, almost verbatim, the affidavit of investigator Melvin
Frederick, which was attached to the Department’s original petition.





[8] In cross-examining Debose
about the investigation leading to removal of J.S.G. and J.A.G., appellant’s
counsel elicited testimony that some of the safety concerns the investigator
initially noted had been remedied by June 27, 2007.  Nevertheless, the February
25, 2009 permanency plan and permanency progress report and Heeg’s testimony
demonstrated that safety hazards continued to exist in the home. 





[9] There is no evidence
regarding the first factor because T.G. was too young to express his desires.  See
In re A.R., 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.) (determining
court need not consider child's wishes in termination proceeding when there was
no indication child was sufficiently mature to express parental preference).