

# NUMBER 13-12-00164-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF C.N.C. AND I.C.C., MINOR CHILDREN

### On appeal from the County Court at Law
### of Kleberg County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellee the Texas Department of Family and Protective Services (the Department) filed suit against appellants Arturo and Bobbie for involuntary termination of their parental rights to C.N.C., their son who was three years of age at the time of trial, and I.C.C., their daughter who was two years of age at that time.[1]  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011).  The trial court found that one or more statutory grounds

---

[1] We will refer to the appellants as Arturo and Bobbie and to the children as C.N.C. and I.C.C. in accordance with rule of appellate procedure 9.8.  *See* TEX. R. APP. R. 9.8(b).

for termination existed for each parent.[2]  *See id.* § 161.001(1)(E), (F), (O), & (P).   It also found that termination was in the children's best interest.  *See id.* § 161.001(2).   Based on these findings, on December 14, 2011, the trial court terminated Arturo's and Bobbie's parental rights to C.N.C. and I.C.C. and appointed the Department as the children's managing conservator.   On appeal, by a single issue, Arturo asserts that the "trial court erred in finding . . . that the termination of the parent-child relationship . . . was in the best interest" of the children.[3]   Bobbie also brings a single issue, complaining of the legal and factual sufficiency of the evidence to support the trial court's best-interest finding and the appointment of the Department as permanent managing conservator of the children.[4]

---

[2] The trial court found the following predicate grounds for termination:  (1) Arturo and Bobbie engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; (2) Arturo and Bobbie failed to comply with the provisions of the court order that specifically established the actions necessary for them to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal for abuse or neglect of the children; and (3) Arturo and Bobbie used a controlled substance in a manner that endangered the health or safety of the children, and (a) failed to complete a court-ordered substance abuse treatment program or (b) after completion of a court-ordered substance abuse treatment program continued to use a controlled substance.   *See* TEX. FAM. CODE ANN. § 161.001(1)(E), (O), & (P) (West Supp. 2011).   In addition, the trial court found that Arturo failed to support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition.   *See id.* § 161.001(1)(F).

[3] Arturo also attempts to raise sufficiency challenges to the trial court's predicate termination ground findings.   He does not, however, provide citations to the record or to authority or a substantive legal analysis regarding the sufficiency of the evidence to support the elements of subsections (E), (F), (O), or (P) of section 161.001(1).   *See id.* §  161.001(1)(E), (F), (O), & (P).   One of the requirements of rule 38.1 is that an appellant's brief must contain a clear and concise argument, including appropriate citations to authority and the record.   *See* TEX. R. APP. P. 38.1(i).   "This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations."   *Ward v. Ladner*, 322 S.W.3d 692, 697 (Tex. App.—Tyler 2010, pet. denied) (op. on reh'g).   "Failure to provide substantive analysis of the legal issue presented results in waiver of the complaint."   *Id.*; *see also In re C.N.M.*, No. 10-10-00178-CV, 2011 Tex. App. LEXIS 2117, at *3-6 (Tex. App.—Waco Mar. 23, 2011, no pet.) (mem. op.) (same); *King v. Tex. Dep't of Protective and Regulatory Servs.*, No. 08-03-00100-CV, 2004 Tex. App. LEXIS 5997, at *14-16 (Tex. App.—El Paso July 2, 2004, no pet.) (mem. op.) (same).   Therefore, Arturo has waived our review of these complaints.

[4] Bobbie challenges the trial court's finding that appointment of the Department as permanent managing conservator was in the children's best interest.   However, the Department was appointed only because of the termination; therefore, this challenge is subsumed in Bobbie's challenge to the termination order.   *See In re D.N.C.,* 252 S.W.3d 317, 319 (Tex. 2008) (per curiam) (holding that when the Department is appointed as managing conservator solely as a consequence of termination, a challenge to that

We affirm.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

In a hearing on the termination of parental rights, due process requires that the Department prove its case by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)). Any complaint that the evidence is legally or factually insufficient to support the findings necessary for involuntary termination is analyzed by this heightened standard of appellate review. *Id.* at 265-66; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). The clear and convincing standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d at 265-66.

Under the clear and convincing standard, an appellate "'court [reviewing the legal sufficiency of the evidence in a parental termination case] should look at all the evidence in the light most favorable to the finding to determine whether a reasonable [factfinder] could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). We assume all disputed facts were resolved "'in favor of [the] finding if a reasonable factfinder could do so.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). An appellate court must also disregard all evidence that a reasonable factfinder could have disbelieved. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266. The appellate court considers undisputed evidence, even if it is contrary to the finding. *In re*

appointment is subsumed in the appeal of the termination order). Therefore, we will not address this contention separately. *See* TEX. R. APP. P. 47.1.

3

*J.F.C.*, 96 S.W.3d at 266. "If [an appellate court] determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*

In our factual sufficiency review, "[i]f, in light of the entire record, the disputed evidence that a reasonable fact[ ]finder could not have credited in favor of the finding is so significant that a fact[ ]finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). Despite the above, an appellate court must give due deference to the factfinder's findings and not supplant the judgment with its own. *In re H.R.M.,* 209 S.W.3d at 108. The factfinder has the sole authority to weigh the evidence, draw reasonable inferences, and choose between conflicting evidence and inferences. *In re R.D.S.,* 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The factfinder also enjoys the right to resolve credibility issues and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* (citing *In re E.S.M.* 550 S.W.2d 749, 757 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.)) (observing that the trial court was entitled to disbelieve the testimony of the biological parent).

In reviewing a best-interest determination, we may consider: the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger posed to the child now and in the future, the parenting skills of those seeking custody, programs available to assist those seeking custody to promote the child's best interest, plans for the child's future, the stability of the home, any conduct by the parent that might show that the existing parent-child relationship is improper or harmful, and any

4

excuse for that conduct. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The absence of evidence as to some of the nine *Holley* factors does not preclude the factfinder from reasonably forming a strong belief or conviction that termination is in the child's best interest, particularly if the evidence is undisputed that the parental relationship endangered the child's safety. *In re C.H.*, 89 S.W.3d at 27. A best-interest analysis may be based on direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence as a whole. *In re S.H.A.,* 728 S.W.2d 73, 86 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

## II. BEST INTEREST OF THE CHILDREN

By each of their issues on appeal, Arturo and Bobbie contend that the evidence is legally and factually insufficient to support the trial court's finding that termination of their parental rights to C.N.C. and I.C.C. is in the children's best interest.

### A. The Evidence

Ramiro Gutierrez, an investigation supervisor for the Department, testified that the Department opened the case in October 2009 when I.C.C., Arturo's and Bobbie's second child, was born and when I.C.C. and Bobbie tested positive for cocaine. Because Arturo and Bobbie were willing to accept voluntary services, the Department referred them to the Family Based Safety Services (FBSS) program. The children, who were already in the care of a family friend, continued that voluntary placement. When the placement broke down in 2010, the Department returned the children to their parents with the understanding that Arturo and Bobbie would continue with FBSS.

Veronica Zavala, a caseworker specialist with FBSS, testified that when the children were returned, Arturo and Bobbie participated in the FBSS services, which

5

included individual counseling, substance abuse counseling, and family counseling.[5] However, on April 30, 2010, Bobbie and Arturo were arrested for domestic violence, and the Department placed the children in foster care. The Department filed its termination petition on June 7, 2010. That same day, the trial court entered a protective order for the children and appointed the Department as their temporary managing conservator.

According to Stephanie Garcia, a caseworker assigned to the case in August 2010, when the trial court removed the children from their home in June, it ordered Arturo and Bobbie (1) to complete individual counseling, family counseling, substance abuse counseling, if recommended; (2) to complete parenting, anger management, and domestic violence classes; and (3) to submit to random drug testing. The trial court also ordered Arturo to pay monthly child support of $100. On February 2, 2011, because Arturo and Bobbie were "doing well," "completing their services," and did not "have any positive drug testing," the trial court ordered a monitored return of the children. Arturo had not yet, however, paid any child support.

On July 21, 2011, one day before the permanency hearing, Arturo informed Garcia that a week earlier he and Bobbie had used cocaine while the children were sleeping and that they had argued and "a wine glass was thrown." Arturo had moved out of the residence. Arturo told Garcia that he loved his children and "wanted what was best for his children." Arturo said that he and Bobbie "needed help" and that he "wanted them to

---

[5] Christina Celeste Cruz, a licensed therapist employed by Counseling Resources of South Texas, testified that she saw Arturo and Bobbie in the Spring of 2010. Both would alternate between progress and regression. Cruz stated that Bobbie had made progress during her counseling services and did participate consistently with the therapy as required by the trial court. Cruz recommended that both Arturo and Bobbie continue outpatient therapy. Cruz's impression was that Arturo and Bobbie loved their children. When asked if it appeared that Arturo had "made a decision between his kids and his drugs," she responded, "I couldn't tell you." Finally, Cruz testified that children are at risk living with parents who use drugs.

6

do what they needed to [do]."

According to Garcia, at the permanency hearing, Arturo and Bobbie volunteered to enter a forty-five day drug rehabilitation program, and the trial court agreed. The court ordered hair follicle tests, which measure drug use in the prior ninety days.[6] Following the hearing, the children were returned to foster care.[7]

On October 6, 2011, Arturo completed his forty-five day inpatient treatment program, which included parenting classes and substance abuse counseling. After his release, Arturo attended individual counseling and substance abuse counseling for a short time, but later failed to report every week as required. Garcia testified that Arturo's October 13, 2011 urinalysis test result was negative, but his November 2011 hair follicle test came back positive. Arturo denied using cocaine, but admitted using hydrocodone pills obtained from Bobbie. Arturo told Garcia that he had not paid any court-ordered child support, but had taken clothing and toys to the children when he visited them.

Garcia also testified that the Department performed five drug tests on Bobbie with the following results: (1) a June 24, 2011 mouth swab with a negative result; (2) a July 22, 2011 urinalysis with a negative result; (3) a July 25, 2011 hair follicle test with a positive result for a relatively high level of cocaine; (4) an October 13, 2011 urinalysis with a negative result for cocaine but a positive result for hydrocodone; and (5) a November 10, 2011 hair follicle test with a level of cocaine lower than the July 25 result but still high enough for a positive result. Following the July 25 positive cocaine test, Garcia referred Bobbie to individual counseling and substance abuse counseling through Counseling

---

[6] The hair follicle test for each came back positive.

[7] The trial court also ordered the removal of a third child, A.C., born to Arturo and Bobbie on February 14, 2011. A separate petition relating solely to A.C. was filed in Brooks County, where the family had been living. A.C. is not part of the current suit.

7

Resources of South Texas for a second time. Bobbie attended counseling consistently for approximately three months; however, after Arturo was released from the inpatient treatment program in October 2011, Bobbie's attendance became inconsistent, and she did not complete her counseling. Nonetheless, Garcia agreed that Bobbie tried to follow through with the requirements. Bobbie attended weekly visitations with the children and when the children were with Bobbie, Garcia believed they were in a safe environment until Arturo informed Garcia that there had been domestic violence in the home and drug use in July 2011.

Garcia explained that, at the time of trial, C.N.C. and I.C.C. were living in a foster home, where they had been placed on August 30, 2011. Garcia believed that because of Arturo's and Bobbie's drug use and domestic violence, it was in the children's best interests for the trial court to terminate their parental rights.

Claudia Pina, a caseworker with the Kleberg/Kenedy County community supervision department, testified that the trial court placed Arturo on community supervision on October 28, 2010 for assaulting Bobbie.[8] According to Pina, Arturo had not completed some required conditions of his supervision, including the required Batterer's Intervention Program, the anger management program, and fifty hours of community service. Pina explained that because of his noncompliance, the community supervision department planned to file a motion to revoke Arturo's community supervision.

Testifying at trial, Arturo characterized his drug use as "a bad habit that I had

---

[8] The record also provides that Arturo was convicted for this offense on January 28, 2010. Because the discrepancy in the date is irrelevant to our analysis, we need not address it. *See* TEX. R. APP. P. 47.1.

picked up, a wrong road that I turned to that I do not want my children going down through." Arturo acknowledged that he bought cocaine and shared it with Bobbie. Arturo testified that "[a]s far as cocaine," he no longer had a drug problem, and he would stop drinking alcohol and smoking if his children were returned to him. Arturo testified that, on the day of trial, he would test negative for cocaine.

Arturo explained that he had been living at a motel for approximately two months and planned to pay his rent "with labor." Arturo believed he could provide a safe environment for the children at the motel. His alternate plan was to live at a mobile home park where the owner would provide him with a mobile home. Arturo would work for the owner and pay monthly rent for the lot. Arturo had also applied for a job a few days before trial and had picked up other job applications. His present income from "service call[s]" was "very, very hard to predict." Arturo testified that he profited approximately $400 from three jobs that he had done the previous day.

Arturo had not paid any child support because he had "other bills," and had not "thought about it and it hadn't been brought to [his] attention that [he] needed to be paying." According to Arturo, a Department caseworker told him "everything's taken care of" and not to "worry about it."

Bobbie testified that she had used drugs to cope with her problems, but had learned other coping skills, such as work and exercise. She had been "clean" since November and would, on the day of trial, test negative for cocaine. Bobbie did not believe she had a drug problem, but agreed she would benefit from additional substance abuse counseling. When asked what would prevent her from returning to drugs to cope with stressful events, Bobbie responded that being away from Arturo would help because

9

she and Arturo had a history of domestic violence. Arturo had assaulted her twelve different times, but she had not prosecuted him every time because they would get "back together." Bobbie had taken Arturo off the apartment lease, changed the locks, and notified the landlord; she and Arturo would "live in two totally different towns." Bobbie explained that "I want a good life for my children[,] and I know that him [sic] and I together are poison."

Despite her problems with Arturo, Bobbie testified that she still worked part-time at the same motel where Arturo worked. She saw Arturo daily and assisted him, for example, with the regular use of her vehicle. According to Bobbie, as of October 2011 when Arturo completed the rehabilitation program, their relationship had become that of friends, and she tried to help him in any way she could.[9]

At the motel, Bobbie worked at the front desk at night and worked as a housekeeper during the day, earning between $20 and $70 a day—$150 to $200 a week. Bobbie testified that she also worked "at a cleaners" and volunteered at the volunteer fire department.

If the children were returned to her, Bobbie would use resources such as Head Start and Medicaid. Although Bobbie had a three-bedroom apartment in Falfurrias that she maintained at "zero rent" through government assistance, she was staying at her sister's house in Riviera, twenty-six miles away, because of her work. When she moved back to Falfurrias, Bobbie planned to return to a full-time job as a certified dialysis technician. She was not working in that field at the time of trial, even though it provided

---

[9] Despite this characterization of their relationship, Garcia testified that on November 10, 2011, Arturo and Bobbie told her that they had "gone out drinking to a bar," began arguing, and returned to a hotel room, where the argument escalated. Bobbie told Garcia that she had called the sheriff's department on that occasion. At trial, Bobbie testified that the altercation was not physical, but "a civil family" incident.

insurance benefits, because it was "hard . . . to get a full-time job . . . because of the therapy, like having to go see the therapist and then having visitation" with the children.

Bobbie testified that she now had family members who could watch her children and provide emotional support because she was no longer seeing Arturo.   She did not plan to reunite with Arturo.   Bobbie explained that she wanted to "go forward with [her] life and have something for [her] children to be proud of."

## B.      Discussion of the *Holley* Factors

### 1.      Desires of the Children

There is no direct evidence in the record regarding the desires of the children, who were two and three at the time of trial.

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child.

*In re W.S.M.,* 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.); *compare id.* ("The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.") *with Yonko v. Dep't of Family & Protective Servs.*, 196 S.W.3d 236, 245 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (op. on rehr'g) ("We agree that the child's desire to remain with a parent is only one factor to consider among many, but love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs.   Where the evidence of the parent's failures is not overwhelming, the desires of the child weigh against termination of parental rights.").   In light of the undisputed

11

evidence of Arturo's and Bobbie's history of domestic violence and drug usage, both before and during the pendency of this case, this factor does not weigh in favor of the parents.

### 2.    Present and Future Emotional and Physical Needs and Dangers

Arturo's and Bobbie's cocaine use while Bobbie was pregnant with I.C.C., their continued drug use while the children were in their monitored care, their engagement in domestic violence for which both were arrested, and Arturo's actions in possessing cocaine and providing it to Bobbie, support the trial court's implied determination that these acts negatively affected the children's emotional and physical needs and created a danger to their emotional and physical needs.   *See In re R.R.*, 294 S.W.3d 213, 236, 237 (Tex. App.—Fort Worth 2009, no pet.); *In re S.K.A.*, 236 S.W.3d 875, 903-05 (Tex. App.—Texarkana 2007), *pet. denied*, 260 S.W.3d 463 (Tex. 2008).   Arturo was also in danger of incarceration because he had not complied with the terms of his community service and had paid no court-ordered child support, from which the trial court could conclude that he was not able to meet some of the children's physical needs.   *See D.O. v. Tex. Dep't of Hum. Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 n.39.   And Bobbie, despite admitting that her relationship with Arturo led to domestic violence and drug use, continued to associate with him on a daily basis.

Based on our review of the evidence at trial, Arturo and Bobbie repeatedly endangered the children physically and emotionally through their drug use and domestic violence.   This instability, as well as the instability of Arturo's and Bobbie's income and living arrangements, illustrates that they are unable to provide for their children's needs.

*See In re C.A.J.*, 122 S.W.3d 888, 893-94 (Tex. App.—Fort Worth 2003, no pet.).

Measuring Arturo's and Bobbie's future conduct by their past conduct, the trial court was entitled to conclude that their past inability to meet the children's physical and emotional needs is indicative of their future inability to meet those needs if the children are returned to them. *See Davis v. Travis County Child Welfare Unit*, 564 S.W.2d 415, 421 (Tex. Civ. App.—Austin 1978, no writ); *see also Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *In re E.A.*, No. 13-06-503-CV, 2007 Tex. App. LEXIS 7159, at *24-25 (Tex. App.—Corpus Christi Aug. 31, 2007, no pet.) (mem. op.) ("[C]onsidering appellant's drug use, the trial court could have concluded that, in the future, similar unsuitable conduct might occur. Because there is evidence that appellant's past actions were unsuitable, the trial court could have inferred that similar unsuitable conduct could recur in the future if the children are returned to appellant."); *In re F.A.R.*, No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *11-12 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.) (concluding that the mother's "[c]ontinued drug use—even after undergoing two drug treatment programs—demonstrates an inability to provide a stable environment for [her child] and an inability to provide for his emotional and physical needs"). Our review of these factors, therefore, does not weigh in favor of Arturo and Bobbie.

### 3.    Parental Abilities of the Individuals Seeking Custody

Arturo and Bobbie continually had periods of regression in their interpersonal relationship and their drug use, which could have negatively impacted their parenting skills and their ability to improve those skills. *See Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.) (providing that evidence that a parent has poor

13

parenting skills and "was not motivated to learn how to improve those skills" supports a finding that termination is in the child's best interest). Both parents failed to pursue counseling, as required. Arturo continued to assault Bobbie, was placed on community supervision during the pendency of the case, and then did not comply with the requirements of that community supervision. He placed himself at risk of incarceration. Bobbie also admitted returning to Arturo on numerous occasions after he assaulted her, despite his on-going drug and alcohol use and his supplying her with cocaine. By these actions, Arturo and Bobbie showed poor judgment and a lack of motivation to improve their parenting skills. *See id.*

Both parties testified as to their hopes and desires for the future, but at the time of trial, they had not made changes in living arrangements or employment that would accomplish those goals. And both, although testifying that they would test negative for cocaine at the time of trial, had tested positive for hydrocodone within months of the trial—either without a prescription or without a current prescription. This evidence reveals that neither Arturo nor Bobbie was motivated to improve or to learn how to improve their parenting skills. *See id.* Based on this analysis, this factor does not weigh in their favor.

### 4. Programs Available to Assist the Parties Seeking Custody

A factfinder can infer from a parent's failure to take the initiative to avail himself or herself of the programs offered by the Department, that the parent did not have the ability to motivate himself or herself to seek available resources needed now or in the future. *In re W.E.C.,* 110 S.W.3d 231, 345 (Tex. App.—Fort Worth 2003, no pet.). Although Arturo and Bobbie participated in, and even completed, some substance abuse treatment as

14

well as other services, they failed to demonstrate that they had learned from the services because the drug use and domestic violence continued even after they had completed services and even after the children were returned to them on a monitored return. Arturo's and Bobbie's compliance with some required services does not constrain a factfinder from determining that termination is in the children's best interest. *See In re M.G.D.*, 108 S.W.3d 508, 514-15 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that evidence of recent improvement and compliance with service plan is not determinative when evaluating child's best interest); *see also In re K.B.*, No. 03-09-00366-CV, 2010 Tex. App. LEXIS 9783, at *21-22 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.). Therefore, our review of this factor supports the trial court's finding that termination of Arturo's and Bobbie's parental rights is in the children's best interest.

### 5. Plans for the Children by the Individuals or Agency Seeking Custody

The factfinder can compare the contrasting plans for a child's future and consider whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.,* 851 S.W.2d at 356. A factfinder can reject a parent's claim that he intends to change his lifestyle to provide and care for a child. *See D.F. v. State*, 525 S.W.2d 933, 939-40 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Even when a factfinder determines that a parent has improved, the factfinder is free to determine that any recent improvements do not outweigh the parent's prior behavior. *See In re M.G.D.*, 108 S.W.3d at 514-15; *see also K.B.*, 2010 Tex. App. LEXIS 9783, at *22.

In this case, the trial court could have disbelieved Arturo's and Bobbie's assertions at trial that they were no longer using illegal drugs, especially because they had both

15

tested positive after drug treatment and after their parental rights were in jeopardy. *See In re R.D.S.,* 902 S.W.2d at 716. It could also have determined that Arturo's and Bobbie's more recent improvements and completion of services did not outweigh their prior behavior. *See In re M.G.D.*, 108 S.W.3d at 514-15; *see also K.B.*, 2010 Tex. App. LEXIS 9783, at *22. The trial court could have believed that Arturo's plans for his work and his living arrangements and his lack of plans for day care demonstrated that his plans were merely speculative. *See D.F.*, 525 S.W.2d at 939-40. It could also have believed that Bobbie's failure to seek a job in Falfurrias and to live there in preparation for the children's return and her actions in remaining in Riviera where she could work with and be of assistance to Arturo, indicated that her plans for a new life in Falfurrias away from Arturo were unrealistic. *See id.*

Although there was no testimony from the Department regarding a future placement for the children the children were together in a foster home and had been there since August 30, 2011. There is no requirement that the Department have definite placement plans at the time of termination, and lack of such plans does not preclude a factfinder from finding that the termination of parental rights is in a child's best interest. *See In re C.H.*, 89 S.W.3d at 28; *see also Spencer v. Tex. Dep't of Family and Protective Servs.*, No. 03-10-00498-CV, 2010 Tex. App. LEXIS 10338, at *9 (Tex. App.—Austin Dec. 31, 2010, no pet.) (mem. op.).

Based on our review, this factor further supports the trial court's finding that termination of Arturo's and Bobbie's parental rights is in the children's best interest.

### 6. Stability of the Home or Proposed Placement

A parent's lack of a home may weigh against that parent. *See Doe v. Brazoria*

16

*County Protective Servs.,* 226 S.W.3d 563, 575 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also In re V.A.,* No. 13-06-237-CV, 2007 Tex. App. LEXIS 805, at *12 (Tex. App.—Corpus Christi Feb 1, 2007, no pet.) (mem. op.). A factfinder can also consider the consequences of its failure to terminate parental rights and that the best interest of the child may be served by termination so that adoption may occur rather than the impermanent foster care arrangement that would result if termination were not ordered. *D.O.,* 851 S.W.2d at 358.

Based on the evidence set out above, the trial court could have concluded that the parents' proposed environments for the children were unstable and that termination, so that adoption might occur, was in the best interest of the children. *See Doe*, 226 S.W.3d at 575; *D.O.,* 851 S.W.2d at 358. We conclude that this factor does not weigh in favor of Arturo and Bobbie.

**7.  Acts or Omissions of the Parent, Which May Indicate That the Existing Parent-Child Relationship Is Not a Proper One**

The following acts or omissions would support a conclusion that the existing parent-child relationship between Arturo and the children was not a proper one: (1) drug use while the children were in his care; (2) criminal activity for which he faced potential incarceration; (3) domestic violence and the exposure of the children to that environment; (4) failure to support the children; and (5) continued drug use. Similarly, the trial court could have concluded that the parent-child relationship between Bobbie and the children was not a proper one from Bobbie's history of the following: (1) drug use while caring for the children, including while she was pregnant with I.C.C.; (2) domestic violence and exposure of the children to that environment; and (3) continued drug use. This factor supports the trial court's finding that termination of Arturo's and Bobbie's parental rights

was in the children's best interest.

### 8. Any Excuse for the Acts or Omissions of the Parent

Arturo explained that he was indigent and that his depression from a previous divorce may have "injected some despair in his job seeking efforts." Arturo suggested that his community supervision officer and a supervisor caused him to fail to comply with some terms of his community supervision. He testified that his drug habit was "a bad habit that [he] picked up, a wrong road that [he] turned to."

Bobbie directed this Court to her relationship with Arturo as the reason for her acts or omissions, yet she admitted returning to him often and not parting from him until the children had been removed twice. Bobbie also claimed that she was "self-medicat[ing]" when she used cocaine to deal with stressful situations, but had found other ways to cope, including work and exercise.

Even if the factfinder believed these excuses and acknowledged the reasoning, it could have determined that they were not good enough and may have determined, instead, that the excuses supported termination of Arturo's and Bobbie's parental rights. This factor then weighs in favor of the trial court's finding that termination of Arturo's and Bobbie's parental rights is in the children's best interest.

### C. Summary

In light of our analysis of the *Holley* factors and reviewing the evidence in the light most favorable to the finding under our clear and convincing standard of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that its best-interest finding was true. *See In re J.L.*, 163 S.W.3d at 84 (quoting *In re J.F.C.*, 96 S.W.3d at 266); *see also Holley*, 544 S.W.2d at 372. Thus, the evidence is legally

18

sufficient to support the trial court's finding on best interest. *See In re J.L.*, 163 S.W.3d at 84; *see also* TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d at 265-66. In addition, in light of the entire record and giving due deference to the factfinder's findings, *see R.D.S.,* 902 S.W.2d at 716, the disputed evidence, if any, is not so significant that the factfinder could not have reasonably formed a firm belief or conviction in the truth of its finding. *See In re M.C.T.*, 250 S.W.3d at 168 (citing *In re H.R.M.*, 209 S.W.3d at 108). We conclude that the evidence is also factually sufficient to support the best-interest finding. We overrule Arturo's sole issue and Bobbie's sole issue.

Further, because Bobbie's challenge to the trial court's finding that appointment of the Department as permanent managing conservator was in the children's best interest is subsumed in her appeal of the parental-rights termination order, *see In re D.N.C.,* 252 S.W.3d 317, 319 (Tex. 2008) (per curiam), we similarly overrule the remainder of her issue.

### III. CONCLUSION

We affirm the final order of the trial court (1) terminating the parent-child relationship between Arturo and the children, C.N.C. and I.C.C.; (2) terminating the parent-child relationship between Bobbie and the children, C.N.C. and I.C.C.; and (3) appointing the Department sole managing conservator of the children, C.N.C. and I.C.C.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
27th day of August, 2012.

19