

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-14-00081-CV**
**No. 10-14-00082-CV**

**IN THE INTEREST OF**
**D.E., M.E., AND J.E., CHILDREN**
**AND**
**IN THE INTEREST OF J.H., A CHILD**

_____

**From the 278th District Court**
**Madison County, Texas**
**Trial Court Nos. 12-13117-278-09 and 13-13265-278-09**

**MEMORANDUM  OPINION**

Raising seven issues in each of these two cases in her joint brief, Appellant J.H. (whom we will refer to with the alias Jane)[1] challenges the trial court's orders of termination of her parental rights to her four children.[2]  We will affirm.

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements:

---

[1] _See_ TEX. R. APP. P. 9.8.

[2] The four children and their ages at the time of trial are J.H. (14), D.E. (9), M.E. (6), and J.E. (4).

(1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2013); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766. If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re T.N.F.,* 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied), *overruled in part on other grounds by In re A.M.,* 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, pet. denied).

After a bench trial in which these two cases were tried together, the trial court found the following predicate violations as grounds for termination of Jane's parental rights as to all four children: (1) Jane knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the physical or emotional well-being of the children (Family Code subsection 161.001(1)(D)); (2) Jane engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being (Family Code subsection 161.001(1)(E)); (3) Jane constructively abandoned the children (Family Code subsection 161.001(1)(N)); (4) Jane failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the children

(Family Code subsection 161.001(1)(O)); and (5) Jane used a controlled substance in a manner that endangered the children (Family Code subsection 161.001(1)(P)).  As to D.E., M.E., and J.E. only, the trial court also found that Jane voluntarily left the children alone or in the possession of another without providing adequate support of the children and remained away for a period of at least six months (Family Code subsection 161.001(1)(C)).  The trial court also found that termination of Jane's parental rights was in the children's best interest.

In her first issue, Jane asserts that the trial judge's comments during a dialogue with counsel and the Department caseworker just before trial began show that the judge had already made up his mind to terminate Jane's parental rights and thus deprived Jane of her constitutional right to a fair trial.  But as the Department notes, Jane failed to preserve this issue for appellate review by not objecting to the comments or moving to recuse before the trial began, and by not asserting the complaint in a motion for new trial.  TEX. R. APP. P. 33.1(a); *see In re C.L.B.,* No. 10-13-00203-CV, 2014 WL 702798, at *8 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.) (citing *In re M.A.-O.R.,* No. 02-11-00499-CV, 2013 WL 530952, at *3 n.10 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.) ("due process contentions in termination cases must be preserved in the trial court to be raised on appeal")).  Therefore, issue one is overruled.

In issue two, Jane asserts that the trial court committed harmful error by overruling her hearsay objection.  We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.  *In re N.C.M.,* 66 S.W.3d 417, 418 (Tex. App.—Tyler 2001, no pet.) (citing *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43

(Tex. 1998)). The trial court overruled Jane's hearsay objection to Department caseworker Dana Anderson's testimony that she was aware that Jane had tested positive for drugs. The Department responded that Anderson's testimony was not being offered for the truth of the matter itself, but to show the Department's actions throughout the cases because Anderson was not the initial caseworker. We cannot say that the trial court abused its discretion, and if it erred in overruling the hearsay objection, the alleged error was harmless in this bench trial. TEX. R. APP. P. 44.1(a)(1). We thus overrule issue two.

Issue three complains of the trial court's taking judicial notice of the case files because the investigator's report and the Department investigator's initial affidavit contain "too much hearsay." *See generally B.L.M. v. J.H.M., III*, No. 03-14-00050-CV, 2014 WL 3562559, at *11-12 (Tex. App.—Austin July 17, 2014, no pet. h.) (mem. op.) (citing *Davis v. State*, 293 S.W.3d 794, 797-98 (Tex. App.—Waco 2009, no pet.)). But a blanket hearsay objection that does not identify which parts of a document are hearsay is not sufficiently specific to preserve a complaint for appellate review. *In re L.M.*, No. 01-11-00137-CV, 2012 WL 2923132, at *5 (Tex. App.—Houston [1st Dist.] July 12, 2012, pet. denied) (mem. op.) (general hearsay objection to Department investigator's report and affidavit not preserved) (citing *In re Estate of Ward*, No. 10-11-00003-CV, 2011 WL 3720829, at *3 (Tex. App.—Waco Aug. 24, 2011, pet. denied) (mem. op.)). Accordingly, issue three is overruled.

In issues six and seven, Jane asserts that the evidence is legally and factually insufficient to support the trial court's predicate findings to terminate her parental

rights in each case. And in issues four and five, she asserts that the evidence is legally and factually insufficient to support the trial court's findings that termination of her parental rights was in the children's best interest.

The standards of review for legal and factual sufficiency in termination cases are well established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable fact-finder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

Anderson, who was the children's caseworker from February 2013 to January 2014 (a month before trial), testified that the Department developed a service plan for Jane and that she did not comply with it. Specifically, she did not have a drug assessment or undergo drug treatment as recommended in her psychosocial evaluation, and she attended counseling only sporadically. Also, Jane had very little contact or

visitation with her children, who had been placed with their grandmother. After Jane had two clean drug screens, she visited them only once, to Anderson's knowledge, and when Jane refused a hair-follicle drug screen, her visitation was suspended until she had two clean drug screens. Furthermore, Jane did not have appropriate housing for the children or stable employment. And finally, the plan required that Jane live a crime-free lifestyle, and Anderson learned that Jane had recently been arrested.

Jane's counselor testified that she sought to see Jane weekly, starting in November 2012; there was one month in the first part of 2013 when Jane did not show up at all, and after she attended one session in July 2013, Jane stopped coming completely.

The Family Code does not provide for substantial compliance with a court-ordered service plan under subsection 161.001(1)(O). *In re S.W.,* No. 10-12-00470-CV, 2013 WL 5807920, at *8 (Tex. App.—Waco Sept. 19, 2013, no pet.) (mem. op.); *In re R.N.W.,* No. 10-11-00441-CV, 2012 WL 2053857, at *2 (Tex. App.—Waco June 6, 2012, no pet.) (mem. op.); *see also In re M.C.G.,* 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The evidence is undisputed that Jane did not complete her service plan. Because the evidence is legally and factually sufficient to support the trial court's finding that Jane failed to comply with the provisions of her court-ordered service plan, we overrule issues six and seven and need not address the sufficiency of the evidence on other grounds for termination.

In issues four and five, Jane asserts that the evidence is legally and factually insufficient to support the trial court's findings that termination of her parental rights

was in the children's best interest. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Evidence of a parent's drug addiction and home and job instability can show a lack of parental abilities. *Doe v. Brazoria Cty. Child Prot. Serv's.*, 226 S.W.3d 563, 574 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV,

2007 WL 293023, at *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage); *In re W.E.C.,* 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet. (factfinder can infer from parent's failure to work programs offered by Department that parent "did not have the ability to motivate herself to seek out available resources needed … now or in the future.").

> We have previously said that endangering conduct is not limited to actions directed towards the child. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage. *See id.* (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also In re M.N.G.,* 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). We accordingly agree that a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct. *In re S.N.,* 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."); *Toliver v. Tex. Dep't of Family and Protective Servs.,* 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Evidence of narcotics use and its effect on a parent's life and her ability to parent may establish that the parent has engaged in an 'endangering course of conduct.'"); *In re R.W.,* 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.") (citation omitted).

*In re J.O.A.,* 283 S.W.3d 336, 345 & n.4 (Tex. 2009).

"Because it exposes the child to the possibility that the parent may be impaired

or imprisoned, illegal drug use may support termination under section 161.001(1)(E)." *Walker v. Tex. Dep't Fam. & Prot. Servs.,* 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Vasquez v. Tex. Dep't Prot. & Reg. Servs.,* 190 S.W.3d 189, 195-96 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (terminating parental rights despite there being no direct evidence of parent's continued drug use actually injuring child)). Often, the best interest of the child is infused with the statutory offensive behavior. *In re W.E.C.,* 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.).

A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs. *In re C.R.,* 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.). A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child. *In re F.A.R.,* No. 11-04-00014-CV, 2005 WL 181719, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.).

The evidence shows that Jane used drugs while D.E., M.E., and J.E. were in the Department's care and that she continued to use drugs during the pendency of the case. At the time of J.H.'s removal, Jane tested positive for methamphetamines and amphetamines. When Jane failed to provide two clean drug screens, her visitation was suspended. She declined a hair-follicle drug test, and for two urine-sample drug tests, she provided a "cold" sample and a then "diluted" sample, indicating an attempt to manipulate the tests.

Jane's counselor said that as of the time that Jane stopped coming to counseling, Jane had not made enough progress to alleviate the Department's concerns and that

Jane was not stable enough to raise a family. Jane did not avail herself of all of the services and programs that the Department offered.

The Department's plan was for the grandmother to be appointed permanent managing conservator of the children. Anderson said that the children are doing "wonderful" with the grandmother; they are happy and love being with the grandmother, and they want to remain with her. Anderson opined that termination of Jane's parental rights was in the children's best interest.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest findings, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant's parental rights was in the children's best interest. Viewing all the evidence in relation to the *Holley* factors, we hold that a reasonable factfinder could have reasonably formed a firm belief or conviction that termination was in the children's best interest. The evidence is legally and factually sufficient on the best-interest findings, and we overrule issues four and five.

Having overruled all of Jane's issues, we affirm the trial court's termination orders in each case.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed October 2, 2014
[CV06]

